JACK CRUMLEY, JR., Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

462 S.W.2d 252.

Court of Criminal Appeals of Tennessee. Sept. 3, 1970.

Certiorari Denied by Supreme Court Jan. 4, 1971.

Larry Dillow, Kingsport, for plaintiff in error.

David M. Pack, Atty. Gen., Lance D. Evans, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., Blountville, for defendant in error.

## OPINION

WALKER, Presiding Judge.

From the dismissal of his post-conviction petition after an evidentiary hearing, the petitioner, Jack Crumley, Jr., appeals to this court.

He alleged that his appointed counsel was ineffective. By amendment he charged that his convictions of arson on pleas of guilty were void because he had no counsel in juvenile proceedings under which his cases were certified to the criminal court.

After a full hearing, the trial judge filed a thorough finding of facts in which he found all of petitioner's contentions without merit. We think his findings are fully supported by the proof. His appointed counsel represented him in a most capable and professional manner.

The trial judge found that the petitioner waived counsel in the juvenile proceedings. In this proceeding he did not deny that he said he did not want a lawyer. His father was present at the juvenile hearing, but the petitioner did not call him as a witness.

Although we think the trial judge's findings are sustained by the proof, we point out that a voluntary plea of guilty waives the failure to appoint counsel in a juvenile court hearing.

In Shepard v. Henderson, Tenn.Cr.App., 449 S.W.2d 726, 734, we said:

"Moreover, under the authorities hereinabove cited concerning the legal effect and import of a voluntary plea of guilty, and there being no arguable question about the trial court's jurisdiction of the person and subject matter in Owens' original trial, all alleged prior defects in the proceedings against him, if any, including the alleged right to and denial of counsel in the juvenile court hearing, were waived by his voluntary guilty pleas to the indictments and he is now precluded

from raising any such alleged prior unconstitutional infringement of his rights by collateral attack upon his conviction."

In a case challenging the failure to appoint counsel in juvenile court for a 15-year-old defendant who later pled guilty, the Supreme Court of Missouri in Jefferson v. State, 442 S.W.2d 6 (1969), held:

"A further and all-inclusive waiver occurred when at arraignment on the criminal charge, with the advice of competent counsel, defendant made no objection to the regularity and propriety of the proceedings in the juvenile court and instead voluntarily entered a plea of guilty."

In State v. Johnson, 5 N.C.App. 469, 168 S.E.2d 709 (1969), the court said:

"By his failure to raise the question in superior court and by his plea of guilty, defendant waived any defect, if indeed any existed, in the proceedings in the juvenile court which resulted in his being brought to trial in the superior court."

In Acuna v. Baker, 418 F.2d 639 (10th Cir. 1969), the court held where a juvenile was appointed counsel in the criminal prosecution after certification proceedings in the juvenile court, the failure to provide counsel in the juvenile proceeding was waived by the voluntary plea of guilty. See also Powell v. Sheriff, Clark County, 462 P.2d 756 (Supreme Court of Nevada 1969).

It follows that the judgment of the lower court is affirmed.

We express our appreciation to Larry Dillow, of the Kingsport bar, for his excellent representation of this petitioner by appointment.

HYDER, J., concurs.

GALBREATH, Judge (dissenting).

I must respectfully dissent. As I see it, the sole question presented by this appeal from the action of the Sullivan County Criminal Court in denying plaintiff in error's petition for post-conviction relief is a factual one:

> "Did the petitioner, a sixteen year old uneducated boy accused of arson, voluntarily and knowingly waive his constitutional right to counsel during a hearing in Juvenile Court at which he was adjudged incorrigible and remanded to Criminal Court for prosecution as an adult?"

Jack Crumley entered pleas of guilty in Criminal Court to four (4) cases of arson after consultation with court-appointed counsel, and it is clear from the record that the pleas were voluntary and a product of free will. This waived all non-jurisdictional defects. See Reed v. Henderson, 385 F.2d 995. This brings us back to the pivotal question of whether the defendant was constitutionally protected in the vital Juvenile Court proceeding in which it was determined that he would be exposed to a prosecution that could result in prison sentences totalling as much as eighty-four (84) years instead of being subject to confinement in a training school for a period of time not to extend beyond his minority. This was no perfunctory proceeding. Because of the potential punishment involved—the boy was sentenced to serve not more

than forty-two (42) years—the hearing on the question of incorrigibility was vital and critical.

Although there is proof in the record that suggests the father of the petitioner stated to the juvenile judge that he did not want a lawyer for his son, a careful line by line reading of the record fails to indicate that the boy ever waived his right to counsel, or that he even knew what was going on! While it may be argued that a father has the right and duty to assist a minor son, nowhere is there any authority found for a father to waive the constitutional rights of a child. No one may do this but the child himself:

"The probation officer cannot act as counsel for the child. His role in the adjudicatory hearing, by statute and in fact, is as arresting officer and witness against the child. Nor can the judge represent the child. There is no material difference in this respect between adult and juvenile proceedings of the sort here involved. In adult proceedings, this contention has been foreclosed by decisions of this Court. A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child 'requires the guiding hand of counsel at every step in the proceedings against him.' Just as in Kent v. United States, supra, 383 U.S. at 561-562, 86 S.Ct., at 1057-1058, [16 L.Ed.2d 84] we indicated our agreement with the

United States Court of Appeals for the District of Columbia Circuit that the assistance of counsel is essential for purposes of waiver proceedings, so we hold now that it is equally essential for the determination of delinquency, carrying with it the awesome prospect of incarceration in a state institution * * *" Application of Gault, 387 U.S. 1, 87 S.Ct. 1428 at 1448, 18 L.Ed. 2d 527.

The finding of the trial court on a question of fact is entitled to great weight. A reviewing court will not undertake to substitute its determination for that of the trial judge unless the evidence in the record plainly preponderates against it. See State ex rel. Jennings v. Henderson, 1 Tenn.Cr.App.——, 443 S.W.2d 835. This seldom occurs in a post-conviction appeal. In only one case recalled by the writer has this Court reversed a trial court in such a case. It, too, involved a juvenile who entered a plea of guilty through his court-appointed counsel who testified at the hearing that, on his advice, the juvenile pleaded guilty even though he steadfastly denied guilt. In that case (Burriss v. State, Ct.Crim.App. unreported opinion filed March, 1969, Knoxville) we disagreed with the trial judge's findings. I do so in this case.

The petitioner testified that he was sixteen at the time of the juvenile hearing before Judge Gilbert Torbett, at that time a General Sessions Judge in Sullivan County with juvenile jurisdictions; that he could not read; and that he did not know what the hearing was about. He had no attorney representing him at the hearing and believed that Judge Torbett asked "my father could he afford a lawyer, and he told him, 'No.'" Petitioner further testified that he could not recognize the word

"arson" or the letters spelling it, and that if he had been told he was entitled to a lawyer he could not recall it. On cross examination he denied ever telling Judge Torbett, or anyone else, that he did not want a lawyer. The petitioner's testimony, standing alone, would strongly suggest that he did not intelligently waive his right to counsel. In light of this we must look to Judge Torbett's testimony in determining whether or not the waiver claimed by the State took place.

Judge Torbett's testimony on the point was:

"Q All right. Now, on that occasion, I'll ask you, did he—did the defendant, Jack Crumley, have counsel—an attorney to represent him?

A He was not represented at the hearing.

Q All right. Did he ask for counsel?

A He didn't ask for counsel. *He was advised of his right to have counsel. As I recall, his father was present, and said they didn't want a lawyer.*

GENERAL KIRKPATRICK: All right. That's all.

THE COURT: Cross examine.

CROSS EXAMINATION BY MR. DILLOW:

Q Judge Torbett, was a determination of indigency made at that time?

A There was no—there was no determination made. It wasn't brought up.

Q Did you know the age of Mr. Crumley?

A Yes.

Q And you advised him of his right to counsel?

A Yes.

Q But you did not appoint counsel for him, is that correct?

A No sir. *There was no request to have one appointed.*" Transcript of proof, pp. 5-6.

The portions emphasized of Judge Torbett's testimony, I believe, strongly preponderate against the finding of the trial court that the juvenile waived his right to counsel. As pointed out above, the father was not in a position to represent his son and communicate this all important waiver. The fact that there was no request for a lawyer made by this unintelligent boy does not overturn his testimony to the clear effect that he did not recall telling anyone he did not want a lawyer. This waiver, to be valid, must be freely made only by the person whose rights are involved, and only with thorough knowledge and consideration of those rights. There might be instances in which a parent might welcome an opportunity to rid the family of a troublesome boy. The juvenile judge in all such cases should satisfy himself that the child understands what is going on and that he has the legal and mental capacity to make such an important decision with full knowledge of the possible consequences.

It is entirely likely that the same judicial determination of delinquency would have been made if the petitioner had been represented by the best of counsel, but as the trial judge wisely remarked during the hearing on the petition:

"It's not really so much a matter of whether it [rul-

ing of incorrigibility] was justified as a matter of the method in which the decision was reached in relation to the petitioner."

The majority relies on our opinion in Shepard v. Henderson, 449 S.W.2d 726, for the proposition that the plea of guilty waived any non-jurisdictional defect. But as pointed out in the portion of that opinion quoted, there was "no arguable question about the trial court's jurisdiction" in *Shepard.* In this case, as I see it, the trial court had no jurisdiction unless a proper hearing was held in juvenile court. I do not believe the hearing was proper under the holding of *Gault, supra,* and therefore do not agree that the jurisdiction of the juvenile court was passed on to the criminal court.

I therefore respectfully dissent.