**STATE of Tennessee, Plaintiff-Appellee,**

v.

**T. Brian LAYNE, Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section.

March 26, 1976.

Certiorari Denied by Supreme Court
July 6, 1976.

R. A. Ashley, Atty. Gen., William C. Koch, Jr., Asst. Atty. Gen., Nashville, for plaintiff-appellee.

Sam R. Raulston, Raulston & Swafford, Jasper, for defendant-appellant.

## OPINION

SHRIVER, Judge.

### The Case

T. Brian Layne, a juvenile, was fifteen years of age at the time he was arrested and charged with Armed Robbery which occurred on the night of August 17, 1974. A hearing was held by the Honorable Grady Barker, Judge of the Juvenile Court of Sequatchie County, Tennessee, on October 9, 1974, on petition of the District Attorney General, pursuant to Sections 37–224, 37–226 and 37–234, T.C.A. The Juvenile Judge held that the defendant, T. Brian Layne, should be held for prosecution and sentencing as an adult in the Circuit Court of Sequatchie County, pursuant to T.C.A., § 37–234.

The holding of the Juvenile Court was duly appealed to the Circuit Court of Sequatchie County, as authorized by T.C.A. § 37–258, and was tried de novo in that Court before Judge Paul A. Swafford who affirmed the judgment of the Juvenile Court that the defendant should be tried as an adult.

From the foregoing actions, the case was appealed to this Court and assignments of error filed.

The Proceedings Below

The order entered in the Juvenile Court recites that the cause came on to be heard before the Honorable Grady Barker, Judge of the Juvenile Court in Sequatchie County, Tennessee, on October 9, 1974, on the petition of J. William Pope, Jr., District Attorney General, pursuant to Sections 37–224, et seq., T.C.A., whereupon it appeared, after a full investigation and hearing, that the defendant, J. Brian Layne, is a juvenile, 15 years of age, and is alleged to have committed robbery by the use of a deadly weapon on the premises of Mr. and Mrs. B. Thurman Davis at their home in Sequatchie County, Tennessee, on the night of August 17, 1974, and the Court, after hearing the evidence, finds that there are reasonable grounds to believe that the defendant committed the delinquent act alleged and does so find beyond a reasonable doubt. The order further recites that the Court determined that the juvenile had been previously committed by the Court as an unruly child, from all of which:

". . . The Court makes the finding from the entire record that the said T. Brian Layne is not amenable to treatment or rehabilitation as a juvenile through available facilities and that he is not mentally retarded or mentally ill and that the interest of the community requires that the juvenile be placed under legal restraint or discipline."

On appeal to the Circuit Court, and after a hearing, the following order was entered:

"ORDER AFFIRMING JUDGMENT OF JUVENILE COURT

This cause came on for hearing before the Honorable Paul A. Swafford, Circuit Judge, Part I, upon the appeal of T. Brian Layne from a prior adjudication of the Juvenile Court of Sequatchie County wherein T. Brian Layne was fifteen years of age at the time of said hearing and was fifteen years of age at the time of the alleged commission of the delinquent act, to-wit: Armed Robbery—robbery accomplished by the use of a deadly weapon upon the persons of Mr. and Mrs. Thurman Davis on August 17, 1974. At said

hearing the Juvenile Court found that there was reasonable grounds to believe that the said T. Brian Layne committed the aforesaid act and that T. Brian Layne was not amenable to treatment or rehabilitation as a juvenile through available facilities and that the said T. Brian Layne was not committable to an institution for the mentally retarded or mentally ill and that the interest of the community required that the said T. Brian Layne be held under legal restraint."

The said order proceeds by stating the Juvenile Court transferred custody of the defendant to the Sheriff of the County to be held and dealt with as an adult, whereupon, defendant's attorney timely perfected an appeal to the Circuit Court where the matter came on to be tried de novo and where testimony was heard in open Court.

The order recites that after reviewing transcripts of the Juvenile Court and considering the testimony and the entire record, the Court was of opinion that the judgment of the Juvenile Court should be affirmed.

The order concludes:

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the judgment of the Juvenile Court be and the same is hereby affirmed, to which action the defendant excepts and prays an appeal to the next term of the Court of Appeals sitting in Nashville, which appeal the Court grants under the conditions the defendant will remain under appearance bond as previously set forth and will file his bill of exceptions within nineth [sic] days.

This 1st day of May, 1975.

ENTER:

/s/ Paul A. Swafford
CIRCUIT JUDGE,
PART I"

Assignments of Error

There are four assignments, as follows:

Assignment No. 1 charges that there is no evidence to support the verdict and judgment of the Court.

Assignment No. 2 asserts error "because the verdict or judgment of the Trial Judge is contrary to the law and the evidence."

Assignment No. 3 asserts that T.C.A. § 37–234 is too broad and vague and is in violation of the Fourteenth Amendment of the United States Constitution and Article I, Section 1 of the Tennessee Constitution.

Assignment No. 4 asserts that the Trial Court erred in holding that there were reasonable grounds to believe that the defendant was not amenable to treatment or rehabilitation as a juvenile through available facilities and that he be placed under legal restraint in violation of the foregoing provisions of the State and Federal Constitutions.

### The Facts

A brief summary of the facts is as follows:

Mr. Thurman Davis and his wife testified that they lived alone in their home in Sequatchie County; that on Saturday night, August 17, 1974, they were alone at home in bed and that at approximately 11:25 P.M., a person known to them as Benny Wallace came to their door and asked permission to use the telephone, stating that he had car trouble. Mr. Davis admitted him to the house, and while he was using the telephone, Brian Layne came in the front door with a gun in his hand. Mrs. Davis was still in bed and Benny Wallace went into the bedroom and told her to get out of bed and come into the living room where she and her husband were both made to sit down. While Benny Wallace stayed in the living room holding a gun, Brian Layne went through the house gathering up personal belongings of the Davis's which he piled up in the living room. They also took a billfold which had a little less than $200.00 in it. Among the items brought into the living room was a gun belonging to Mr. Davis and, at an opportune time, Mr. Davis grabbed this gun and shots were exchanged wherein Mr. Davis was wounded with a shot in his back and Benny Wallace was also injured.

After a search of the house and before the shooting occurred, Benny Wallace told Mr. and Mrs. Davis that he was going to kill them. Appellant later testified that he told Wallace he did not desire to kill the victims. Mr. Davis was not sure as to which of the two fired the shot that wounded him but he and Mrs. Davis escaped from the house and were able to get in their car and drive to the hospital. One of the two intruders shot at them as they drove away.

Appellant admitted his participation in the crime. He stated that he was fifteen years old at the time and stated that prior to this time his parents had asked the Juvenile Judge to send him to the Tennessee Preparatory School because he was not attending school regularly and because he was staying away from home and associating with Benny Wallace. After being sent to the Tennessee Preparatory School, he remained there for a few weeks and approximately four weeks prior to the Davis robbery Wallace went by the school and defendant, Brian Layne, ran away with him and stayed with Wallace during the time prior to his arrest. He denied that he ever threatened Mr. or Mrs. Davis and although Benny Wallace was a convicted felon and an adult, the defendant denied knowing that Wallace had been charged and convicted of a crime previous to the Davis robbery.

Selby Seals, Sheriff of Sequatchie County, testified that he arrested Brian Layne and, after he was treated for a flesh wound, he was taken to the Sequatchie County Jail. He stated that he had known the boy all of his life and the only complaint that he ever had against him was when he would not stay at home and his father asked him, the Sheriff, to pick the boy up because he was not staying at home and was not going to school regularly.

The Juvenile Judge, Grady Barker, testified briefly as to the hearing in his Court and his disposition of the case.

Dr. J. E. Gilliland, a psychologist with a Ph.D. in Psychology and whose qualifications were admitted by the State and who is licensed to practice in Tennessee, testified that he had made a psychological examina-

tion of Brian Layne; that he did not find the boy to be suffering from any mental problem except that he had remorse and guilt which could be expected under the circumstances. He found that the boy had some frustration. When asked whether in his opinion the defendant was amenable to treatment and rehabilitation as a juvenile, he stated that the boy had an average IQ and that he probably should be in a vocational technical school to learn a trade and that he needs counseling. He stated that there was nothing about the boy's character that alarmed him enough that he would say he was afraid that the boy might be dangerous to the community.

On cross-examination, among other things, Dr. Gilliland stated:

"I think he's very impressionable and if he goes to a penitentiary with adults I think that would have an unfavorable impression upon him."

Mr. Harry Rowland, Principal of Sequatchie County High School, testified that Brian was in his Third Year in High School; that since he has been out of jail, his attendance has been very good; that he had noticed a change in the boy's attitude and that he did not cause any serious problems in school.

Gary Chrisman, one of the Coaches at the High School, commented on Brian's physical ability and his interest in athletics.

Mr. Barrett, a Guidance Counselor at the High School, described a conference with the defendant and, in answer to the question as to whether, in his psychological opinion, Brian Layne was amenable to treatment or rehabilitation as a juvenile through available facilities, he answered:

"My opinion is that Brian is certainly capable of doing a good job, and I think he's capable of living the kind of life that he needs to live and be accepted in society. I believe that Brian is capable of doing that."

On being questioned as to the attitude of other students toward Brian since his trouble arose, among other things, he said:

". . . They think of him as a young man and I haven't heard one student that would be very abusive in a situation that he is in now."

Donna Bone who teaches a Sunday School Class in the Community Baptist Church where Brian attends, stated that his attendance at Church and Sunday School has been regular since he was released from jail and that she had noticed a change in him.

Brian Layne's father testified, among other things, that he has noticed that since Brian got out of jail, his attitude is different and he has been a good boy.

### Our Conclusions

It is to be noted that Title 37 of the Code, "Juveniles," was revised and re-enacted by Chapter 600, Acts of 1970, comprising Sections 37–101, et seq., of the Code.

In Section 37–229, T.C.A., among other things, it is provided:

". . . In the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony is sufficient to sustain a finding that the child is in need of treatment or rehabilitation."

*Section 37–234, T.C.A.,* entitled "Transfer from Juvenile Court," provides that after a petition has been filed alleging delinquency based on a crime or public offense, the Court may transfer the child to the Sheriff of the County to be held according to law and:

"The disposition of said child shall be as if he were an adult if:

(1) the child was sixteen (16) or more years of age at the time of the alleged conduct . . . if the offense charged included murder, rape, robbery with a deadly weapon or kidnapping;

\* \* \* \* \* \*

(4) the court finds that there are reasonable grounds to believe that

(i) the child committed the delinquent act alleged;

(ii) the child is not amenable to treatment or rehabilitation as a juvenile;

(iii) the child is not committable to an institution for the mentally retarded or mentally ill; and

(iv) the interests of the community require that the child be placed under legal restraint or discipline.

"(f) . . . After a child has been sentenced to an adult institution the department of correction may file a petition requesting the committing court to allow the department to transfer said defendant to an institution for juvenile delinquents. Upon the approval by such court the defendant may be transferred by the department of correction to a child caring institution to be held until his eighteenth birthday. At the defendant's eighteenth birthday he or she may be transferred to an adult institution if there is time remaining on the defendant's term. If the term expires prior to the eighteenth birthday said defendant shall be released. Any child sentenced by a committing court pursuant to this section shall, for the purpose of parole, be treated as if he were an adult."

■ Under the statutes and under the decisions, upon judgment by the Juvenile Court that defendant should stand trial as an adult, the case is appealable to the Circuit Court where it is tried de novo with a presumption of correctness of the Juvenile Court's findings. See *In re Houston,* 221 Tenn. 528, 428 S.W.2d 303 (1968).

■ As to the assignments which assert that the Juvenile Court Act, particularly Section 37–234, is so vague that men of common intelligence cannot understand it without guessing at its meaning and application and is, therefore, void as violative of the State and Federal Constitutions, the Tennessee Supreme Court in *State ex rel. Davis v. Strickland,* Hamilton Law, filed December 8, 1975, found this argument to be without merit. The Opinion states:

"Lastly, defendants argue that T.C.A. § 37–234 is unconstitutional because it is overbroad and vague. The assignment is without merit. The basic concept behind the vagueness doctrine is the idea of fairness, and that the statute should be suffi-

ciently specific to provide notice of the type of conduct expected. The doctrine should not be used to create a constitutional dilemma out of the practical difficulties in drawing statutes. *Colten v. Commonwealth of Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d [584] 548 (1972). The lack of precision in a statute does not render a statute unconstitutional per se. See *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Judged by these standards the language of T.C.A. § 37–234 is constitutionally adequate in that it establishes criteria upon which the Juvenile Judge is to base his decision on whether to transfer the juvenile to the Criminal Court, and it adequately informs the parties as to what is to be considered by the Judge."

We are of opinion, in line with *Strickland,* that the assignments of error based on unconstitutionality are without merit and are, therefore, overruled.

■ Applying the holdings of the Supreme Court in *Strickland,* supra, it would seem that the decision in the case at bar as to whether the Lower Court should be affirmed and the case remanded for the defendant's trial in the Circuit Court as an adult is not to be determined on the basis of what we might conceive to be the preponderance of the evidence that was presented in the Juvenile Court and in the Circuit Court. In *Strickland,* the Supreme Court, speaking through Chief Justice Fones, said:

"Defendants next argue that there is insufficient evidence in the record to support a finding that the juveniles are not amenable to treatment or rehabilitation (4)(ii). The Court is only required to find that there are 'reasonable grounds' upon which to base a finding that a juvenile is not amenable to rehabilitation. The Juvenile Court, in its role of *parens patriae* is placed in a unique position with regard to the persons appearing before it. The Juvenile Judge is experienced in the evaluation of youthful offenders and is given a wide range of discretion in attempting to establish the most beneficial course of action in rehabilitating those offenders.

In making a decision whether a juvenile is amenable to treatment or rehabilitation, the Juvenile Judge may consider many factors including testimony by expert witnesses, the type of facilities available, length of stay in these facilities, the seriousness of the alleged crime, and the attitude and demeanor of the juvenile."

At another point in *Strickland* it was said:

"The juveniles here have not been tried upon any charge; their guilt or innocence has not been adjudicated. They have no constitutional right to a jury trial at what is essentially a probable cause hearing. Nor is there a statutory right to a jury trial as T.C.A. § 27–234(a)(4) provides that the Judge shall make the factual determination at the transfer hearing."

As to the procedure that has been followed in the case at bar it is interesting to note that in *Strickland,* a similar proceeding was followed as noted in the *Strickland* Opinion where the Court said:

"The Juvenile Court of Hamilton County, after receiving evidence at the transfer hearing, determined that the petitioner should be transferred to the Criminal Court and tried as an adult. That judgment was affirmed on de novo appeal by the Circuit Court of Hamilton County. An appeal was then taken to the Court of Appeals which affirmed the transfer to Criminal Court."

As is pointed out by the Supreme Court in *Strickland,* the juvenile in the case at bar has not been tried on any charge; his guilt or innocence has not been adjudicated since the hearing in the Juvenile Court and on appeal to the Circuit Court was essentially a probable cause hearing and the final outcome of the defendant's trial before a Court and jury is yet to be determined.

Applying the reasoning in *Strickland* to the case at bar, we are of opinion that the judgment below should be affirmed. Accordingly, the assignments of error are overruled, the judgments of the Juvenile Court and the Circuit Court are affirmed and the cause is remanded to the Circuit Court of Sequatchie County for trial as above indicated.

AFFIRMED AND REMANDED.

TODD and DROWOTA, JJ., concurs.

DROWOTA, Judge, concurring.

Appellant's emphasis on appeal is based principally upon two theories. He first argues that T.C.A. § 37–234 is unconstitutional because it is too broad and vague. This same argument was made in *State ex rel. Davis v. Strickland* (Tenn.1975), and our Supreme Court in upholding the constitutionality of the statute stated: " . . . the language of T.C.A. § 37–234 is constitutionally adequate in that it establishes criteria upon which the Juvenile Judge is to base his decision on whether to transfer the juvenile to the Criminal Court, and it adequately informs the parties as to what is to be considered by the Judge."

Appellant's other theory is that the trial court in considering the criteria of whether the child is amenable to treatment or rehabilitation as a juvenile erred in concluding that there were reasonable grounds to believe that the defendant was not amenable to rehabilitation. Appellant avers that the proof is overwhelmingly to the contrary. Appellant further contends that the State's proof on this issue was silent. The appellant apparently concedes for the purposes of this appeal, that there are reasonable grounds to believe that the defendant committed the alleged delinquent act and that he is not mentally retarded or mentally ill.

A review of the evidence fails to uncover any testimony by any witness that the defendant is not amenable to rehabilitation. On the contrary, Dr. Jerry E. Gilliland, a psychologist, and Mr. Barrette, a Youth Guidance Counselor, both testified as to the defendant being amenable to rehabilitation.

Dr. Gilliland found the defendant to be of average intelligence with no personality disorder and with no mental problems except for remorse and feelings of guilt. He found nothing to indicate that the defendant would be dangerous to the community,

for he found no violent tendencies. He further testified that the defendant needs counselling and needs to complete a program of vocational technical school and learn a trade. He stated that such a program is available at the Taft Youth Center, however he was thinking of something even more than that, long term training.

The record reflects that the defendant's father asked the Juvenile Judge to send his son to Tennessee Preparatory School because he was staying out at night, was hard to control, and was running around with Benny Wallace. The defendant testified that Benny Wallace came to visit him one day at T.P.S. and he told Benny "I was wanting to come back, that they could hide me out." When Benny returned to T.P.S. the second time the defendant left with him. After hiding out for several weeks the delinquent act was committed by the defendant and Benny Wallace.

Judge Grady Barker, the Juvenile Court Judge, testified that he would have been willing to send the boy to a juvenile institution rather than sending him to the penitentiary if he had the authority to set the time, however, he felt the boy should be kept longer for rehabilitation. The Circuit Judge also indicated that under the proof the only available institution was Taft Youth Center and the proof indicated that this young man needed a period of longer treatment than was available there.

Thus both the Juvenile and Circuit Court Judges apparently based their decision not on the fact that the defendant was not amenable to rehabilitation but based their decision on the fact that the juvenile was not amenable to rehabilitation in our state institutions due to the length of time he would stay.

In *Strickland* our Supreme Court stated that:

The Court is only required to find that there are "reasonable grounds" upon which to base a finding that a juvenile is not amenable to rehabilitation. . . . In making a decision whether a juvenile is amenable to treatment or rehabilitation, the Juvenile Judge may consider many factors including . . . the type of facilities available, *length of stay in these facilities,* the seriousness of the alleged crime, and the attitude and demeanor of the juvenile. (emphasis added)

It should be noted that in the *Strickland* case and in this case T.C.A. § 37-234(a)(4)(ii) read as follows: "The child is not amenable to treatment or rehabilitation as a juvenile *through available facilities.*" (emphasis added). Effective May 28, 1975, the phrase "through available facilities" was deleted (Chapter 296 of the Tenn.Pub. Acts of 1975). The consequences of this amendment have not yet been interpreted by our courts. In *Strickland* the Court specifically considered the type of facilities available and the length of stay in the facilities. The trial judge in this case specifically considered the fact that the facilities available only provided short term rehabilitation programs and he felt the defendant needed longer treatments and therefore was not "amenable to the treatment or rehabilitation as a juvenile through available facilities." Unquestionably the deleted phrase changes the statutory requirement. As stated earlier, none of the witnesses in this case indicated that the child was not amenable to rehabilitation, however there was sufficient evidence for the trial judge to find reasonable grounds to believe that the child was not amenable to rehabilitation *through available facilities.* This ground apparently will not exist in the future.

This is a sad commentary upon our system of justice and rehabilitation when a child is required to stand trial as an adult due to the crowded conditions and lack of facilities in our juvenile institutions.

As indicated above, the question before us is not whether we would have found the juvenile not amenable to rehabilitation, but whether there were "reasonable grounds" upon which the trial court could base a finding that the defendant is not amenable to rehabilitation through available facilities. The lower court obviously considered the fact that the defendant had been commit-

ted to T.P.S. and would not stay there, the fact that he associated with Benny Wallace, and the fact that he participated in the commission of a violent crime as "reasonable grounds" for determining that the period of juvenile rehabilitation was not sufficient. I therefore concur with Judge Shriver that the judgment below should be affirmed.

I share the same concerns that Judge Todd expressed in his separate concurring opinion, and that Dr. Gilliland expressed when he stated: "I think he's very impressionable and if he goes to a penitentiary with adults I think that would have an unfavorable impression upon him." Once a child is transferred to criminal court, any disposition imposed by that court is the same as if the child was an adult. Following transfer, no child shall be sentenced to a state correctional school for juvenile delinquents. However, after a child has been sentenced to an adult institution, the department of corrections may file a petition requesting the sentencing court to allow the department to transfer the juvenile defendant to an institution for juvenile delinquents. If the court approves this petition, the defendant may be transferred by the department of corrections to a child caring institution until his eighteenth birthday. If time on his sentence remains to be served when the child reaches eighteen, he can be transferred back to an adult institution. If the term expires before his eighteenth birthday, the defendant is to be released. For purposes of parole, any child transferred to an adult court and subsequently sentenced is to be treated as an adult. T.C.A. § 37–234(f) (1975 Supp.).

I would also like to make the following observation. In *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), the United States Supreme Court held that the double jeopardy clause of the Fifth Amendment attaches to the transfer hearing if the hearing becomes an adjudicatory proceeding to determine if the juvenile committed the offense charged. The Court stated that "nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding." A reading of the State's proof in this cause leads me to suggest that judges should be cautious as to the amount of evidence admitted to show the child committed the delinquent act. They should and must prevent the transfer hearing from becoming an adjudicatory proceeding.

TODD, Judge, concurring.

Having no legitimate grounds for dissent, I must concur.

However, the picture presented by the evidence is that of a somewhat neglected and impressionable boy who has been led into a single criminal act of crime by an adult. The evidence does not indicate that he is beyond rehabilitation. On the contrary, the evidence indicates that he has already reversed his course and is pursuing a new way of life.

The only "fly in the ointment" seems to be the reluctance of the Juvenile Judge to relinquish control of the length of the stay at a juvenile institution. This is a strong reflection upon some part of our system of justice and rehabilitation.

There is no solace in the assurance that guilt or innocence will be determined by a fair trial. Guilt has been admitted, and will hardly be an issue in Circuit Court. The issue in Circuit Court will be the same as it was in Juvenile Court; namely, is there a judge on the bench with courage and compassion enough to preserve a wayward youth from the unthinkable consequences of mixing with hardened criminals in an adult institution.

My distaste for joining in this decision is relieved by my confidence that the Circuit Judge will exercise his discretionary power to assist this youth on his way to useful and virtuous manhood.