959 F.2d 234
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jimmy Lee KEY, Petitioner-Appellant,
v.
Howard CARLTON, Warden, Respondent-Appellee.
 No. 90-6602.
 United States Court of Appeals, Sixth Circuit.
 April 7, 1992.
 
 Before RALPH B. GUY, Jr. and RYAN, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Appealing the denial of a habeas writ under 28 U.S.C. § 2254, petitioner Jimmy Lee Key challenges the constitutionality of Tennessee juvenile court proceedings occurring over 20 years ago and his subsequent conviction in criminal court of offenses transferred from juvenile court. Key was found to be an habitual criminal based on these offenses. We affirm the denial of the writ.
 
 I.
 
 2
 Throughout 1969, several petitions of delinquency were filed against Key in the Juvenile Court for Knox County, Tennessee, alleging various acts including burglary and larceny. In August of that year, the juvenile court conducted a hearing to determine whether to transfer jurisdiction over two of the petitions to criminal court.[1] Key contends that he was not represented by counsel at that hearing. An attorney was present and entered Key's plea of not guilty, but Key claims that the lawyer represented Key's former wife, who had gained access to Key's closed hearing by indicating that the attorney represented Key.
 
 
 3
 Upon transfer to criminal court, Key was represented by Robert Ritchie, a law student. Six separate indictments stemming from the transferred juvenile petitions were returned. Key pled guilty to all six charges in December 1969.
 
 
 4
 In 1976, Key was convicted of burglary while in possession of a firearm. Another attorney, Anthony Brown, represented Key at this trial. Based on the earlier convictions, Key was found to be an habitual criminal and was sentenced accordingly. Several years of unsuccessful post-conviction petitions in Tennessee courts ensued, followed by a habeas petition in federal court and the present appeal.
 
 II.
 
 5
 Key first asserts a violation of his Sixth Amendment right to counsel, claiming that he was unrepresented at the 1969 transfer hearing and that the assistance he received from the law student in the criminal-court proceedings (at which Key pled guilty) was ineffective for failing to raise defects in the transfer process.
 
 
 6
 The issue as to the law student's effective assistance in the 1969 criminal court proceeding has not been exhausted. The only ineffective assistance issue Key raised before the court of criminal appeals concerned the allegedly defective performance of the lawyer who represented him at his 1976 burglary and habitual-criminal trial.[2] Key's application for permission to appeal to the Supreme Court of Tennessee similarly raised an ineffective assistance claim only with respect to his 1976 trial counsel. It is "clear that 28 U.S.C. § 2254 requires a federal habeas petitioner to provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim. It is not enough that all the facts necessary to support the federal claim were before the state courts...." Anderson v. Harless, 459 U.S. 4, 6 (1982) (citations omitted).
 
 
 7
 In addition, like the state and federal courts considering the issue, we find that while Key had a constitutional right to counsel at the transfer hearing,[3] he waived his objection to the lack of counsel by entering the guilty plea in criminal court--at which time Key was assisted by counsel.[4] Shepard v. Henderson, 449 S.W.2d 726 (Tenn.1969). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). This waiver may be found, of course, only if the plea was voluntary and intelligent. Key never properly challenged the voluntary and intelligent nature of his plea in state court.[5]
 
 
 8
 We note that in Canary v. Bland, 583 F.2d 887, 889 (6th Cir.1978), we held that the "break in the chain of events" rule of Tollett does not bar "a federal habeas challenge to claimed constitutional deficiencies when state procedure permits appellate review of those issues after a guilty plea." The Kentucky case law at issue in Canary permitted a challenge to the legality of transfer proceedings, by direct appeal and otherwise, by one who had pled guilty after the transfer. Tennessee cases have made clear, in contrast, that any error in the failure to appoint counsel at a juvenile hearing transferring charges to criminal court is waived by a voluntary plea of guilt in the criminal court. Crumley v. Tennessee, 462 S.W.2d 252 (Tenn.Crim.App.1970).
 
 
 9
 We therefore find that Key's Sixth Amendment claim and his related attack on his guilty plea fail.
 
 III.
 
 10
 Key also contends that the jury instructions at the habitual criminal sentencing stage of his 1976 armed burglary trial improperly shifted the burden of proof. In instructing the jury that it could find Key to be an habitual criminal if, among other things, it found that Key was "the identical person" named in the records of three prior convictions, the judge stated that if the name of the person in those prior judgments was the same as the defendant's, this "shall be prima facie evidence that the identity of such person is the same."
 
 
 11
 Respondent agrees that this instruction required the jury to draw an inference that Key was, indeed, the person named in those previous judgments of conviction. We agree, however, with the district court and the court of criminal appeals that such shifting constituted harmless error. Key made no issue of his identity in the underlying convictions; the evidence that Key qualified as an habitual criminal was essentially uncontested. The state court also found, and the transcript shows, that the judge instructed the jury that guilt must be found beyond a reasonable doubt, that Key's innocence must be presumed, and that no adverse inference could be drawn from Key's failure to testify. In addition, Key freely admits he was the person named in the prior judgments. On this record, Key has not shown that the instructions, taken as a whole, " 'so infected the entire trial that the resulting conviction violates due process....' " Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (citation omitted).
 
 IV.
 
 12
 Finally, Key claims a double jeopardy violation in that he was convicted of certain offenses in criminal court after the orders transferring those offenses from juvenile to criminal court allegedly contained a finding of delinquency, and after a transfer hearing at which evidence of Key's commission of two offenses was presented. Key bases his claim on the case of Breed v. Jones, 421 U.S. 519 (1975), in which the Supreme Court found a double jeopardy violation in the prosecution of a defendant as an adult after the juvenile court heard evidence and determined that defendant had violated a criminal statute and was unfit for treatment as a juvenile. For the reasons outlined below, we need not determine whether Breed may be applied retroactively in this proceeding.
 
 
 13
 The record reveals that Key's argument that the presentation of evidence at the transfer hearing violated double jeopardy is new, and we will not consider it. After examining Key's claim regarding the alleged finding of delinquency in the transfer orders, we conclude that it is meritless.[6]
 
 
 14
 Under the state court's interpretation of the transfer documents, "the sole intention of the juvenile court was to transfer the petitioner to adult court, not to determine guilt [or] delinquency ... [nor] to provide penalties." The presumption of correctness for state court findings of fact supported by the evidence applies to findings by state appellate courts. Sumner v. Mata, 455 U.S. 591, 592-93 (1982). The state court attributed the problem to the fact that the juvenile court judge, in ordering the transfer, used pre-printed form orders "designed to [record a finding that] the child was or was not delinquent or dependent and to provide a blank space for sanctions." The juvenile court judge used this blank space to order the transfer, rather than to order sanctions following an adjudication of delinquency. On these facts, Key's double jeopardy claim is unavailing.
 
 
 15
 We acknowledge that our double jeopardy analysis under Breed would require us to focus not on the "end product" or "journal entry" of a juvenile court proceeding, but rather on the juvenile court's statutory powers at that proceeding. Sims v. Engle, 619 F.2d 598, 604 (6th Cir.1980), cert. denied, 450 U.S. 936 (1981). Thus, in Sims, we found a double jeopardy violation in an Ohio juvenile court's transfer order even though it apparently contained no notation of a finding of delinquency. The result in that case turned on the crucial fact that the Ohio juvenile court conducting the transfer proceeding was statutorily required "to make a finding of delinquency, that is, that the child had committed the alleged offenses, based on a full investigation of the facts." Id. Tennessee law, in contrast, requires no such pre-transfer finding; indeed, it prohibits such a finding. McGaha v. Tennessee, 461 F.Supp. 360, 361 (E.D.Tenn.1978). Upon the filing of a petition against the juvenile, the Tennessee juvenile court is empowered to conduct a transfer hearing "before hearing the petition on the merits." Tenn.Code Ann. § 37-1-134(a).[7] The juvenile court at the transfer hearing may determine only whether there are reasonable grounds to believe the juvenile committed delinquent acts as alleged in the petition.
 
 
 16
 AFFIRMED.
 
 
 
 *
 Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The rest of the petitions, and two more filed in juvenile court after the August 1969 hearing, were transferred to criminal court without a hearing
 
 
 [2]
 Key apparently has abandoned any complaints about his 1976 trial counsel
 
 
 [3]
 In re Gault, 387 U.S. 1 (1967)
 
 
 [4]
 For this same reason, we also reject Key's current challenge to the criminal court's jurisdiction. Key claims that the criminal court lacked jurisdiction because not all of the transferred petitions were subjected to a hearing, and because certain mandated factual findings (regarding age, sanity, and amenability to corrective treatment in the juvenile system) were not specifically made at the one transfer hearing that was held. Key also fails to state why these procedural errors amount to a violation of any of his federal constitutional rights
 
 
 [5]
 A represented defendant "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" was outside " 'the range of competence demanded of attorneys in criminal cases.' " Tollett, 411 U.S. at 266, 267 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970). Key's only allegation approaching such a claim, made for the first time in this appeal, is that the law student failed to object to Key's lack of counsel at the transfer hearing and to certain technical defects in the juvenile court proceedings (such as the failure to notify Key's parents of pending petitions). "[I]t is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts...." Tollett, 411 U.S. at 267
 
 
 [6]
 The court of criminal appeals found that Key had raised the transfer-order double-jeopardy issue for the first time on appeal, having failed to raise it in his petition for post-conviction relief. That court noted the improper procedure, but examined the issue only to demonstrate its lack of merit. As we, too, find the argument groundless, we will not consider the implications of this procedural default under Harris v. Reed, 489 U.S. 255 (1989)
 
 
 [7]
 The present codification of Tennessee's transfer hearing rules is substantially similar to the version controlling in McGaha, 461 F.Supp. 360 (E.D.Tenn.1978). See Tennessee v. Layne, 546 S.W.2d 220, 223-24 (Tenn.App.1976). The version at issue in Key's 1969 hearing, section 37-264, permitted a juvenile court judge to order a child held for prosecution as an adult, after a "full investigation and hearing," only if certain findings--not including a finding that the juvenile did in fact commit the offense--were made