IN RE JACKSON.

(No. 69-290—Decided March 18, 1970.)

Mr. John T. Corrigan, prosecuting attorney, Mr. Harvey R. Monck and Mr. Charles R. Laurie, for the state. Mrs. Carol G. Emerling, for Leslie Jackson.

HERBERT, J. Effective November 19, 1969, significant amendments were made to the Ohio Juvenile Code. This opinion relates solely to the Code as it existed when the instant case was considered below and prior to the effective date of those amendments.

The order of the Juvenile Court binding the appellee over to the Court of Common Pleas stated, in part:

"'* * * After full investigation and a hearing, the child being duly represented by * * * [counsel], the court finds that there is probable cause to believe that the child has committed an act which if committed by an adult could be a felony. The court having carefully examined the reports of the duly qualified persons who conducted the physical and mental examinations of the child and the report of the probation officer and being fully advised in the premises finds that the child herein is not amenable to the care and treatment available to this court and that the child is charged with a law violation wherein the protection of society and other considerations requires that he be treated as an adult. It is therefore ordered, adjudged and decreed that, pursuant to Section 2151.26, Ohio Revised Code, the said Leslie Jackson be, and he is hereby bound over to the Court of Common Pleas of Cuyahoga County for further proceedings according to law.''

In reversing the order of the Juvenile Court, the Court of Appeals provided no written opinion. However, its journal entry stated, in part:

"Upon consideration whereof, this court orders the

judgment reversed as contrary to law for the reason that upon a careful reading of the record herein and the journal entry of the court we find that the court made no finding that the defendant was a delinquent child and that, if a delinquent, he could not be rehabilitated within the exercise of the exclusive jurisdiction of Juvenile Court. We conclude and hold that such determinations are a condition precedent to the waiver of its jurisdiction by the Juvenile Court in favor of a bind over to the Court of Common Pleas. Cause remanded to the Juvenile Court for further proceedings according to law consistent with this holding. In view of the foregoing ruling all other assigned errors are overruled.''

One of the basic questions raised by this appeal is whether a juvenile court must make a determination and finding of delinquency before it can bind a juvenile over to the Court of Common Pleas.

In 1968, Section 2151.26, Revised Code, provided:

''In any case *involving a delinquent child* under Sections 2151.01 to 2151.54, inclusive, of the Revised Code, who has committed an act which could be a felony if committed by an adult, the juvenile judge, after full investigation and after a mental and physical examination of such child has been made by the youth commission, or by some other public or private agency, or by a person qualified to make such examination, may order that such child enter into a recognizance with good and sufficient surety, subject to the approval of the judge, for his appearance before the Court of Common Pleas at the next term thereof, for such disposition as the Court of Common Pleas is authorized to make for a like act committed by an adult; or the judge may exercise the other powers conferred in such sections in disposing of such case.'' (Emphasis added.)

Appellant contends that the statute requires only that the juvenile be charged as a delinquent, and not that he be found to be a delinquent, before being bound over to the Court of Common Pleas. However, it is clear to us that before the Juvenile Court may bind the child over to the

Court of Common Pleas, it must first determine that the child is, in fact, delinquent. The language employed in the statute is unambiguous and does not indicate any legislative intent to the contrary. See *State, ex rel. Gareau,* v. *Stillman* (1969), 18 Ohio St. 2d 63, 247 N. E. 2d 461. To permit the word "delinquent," as used in Section 2151.26, Revised Code, to be read to mean "alleged delinquent" would distort the true meaning of Section 2151.26, and would ignore the dispositional powers thereby granted to the Juvenile Court. As Judge Bell, dissenting on other grounds, stated in his opinion in *State* v. *Worden* (1955), 162 Ohio St. 593, 597, 124 N. E. 2d 817:

"Let us examine the procedure to be followed under these statutes. A juvenile is arrested and charged with a * * * [crime]. Under Section 2151.25, such juvenile *must* be brought before the Juvenile Court. Then, under Section 2151.26, *provided such juvenile is found to be a delinquent,* the juvenile judge may order him to appear before the Court of Common Pleas. But, first, the juvenile must be found to be delinquent. And this can be done only after a hearing. It is only after this finding of delinquency that the juvenile judge may exercise some discretion. He may dispose of the matter by committing the juvenile to the appropriate correctional school, release him, or 'bind him over,' so to speak, to the Court of Common Pleas. * * *"

We agree with the Court of Appeals that as conditions precedent to the binding over of a juvenile to the Court of Common Pleas, the Juvenile Court must find that the child is, in fact, delinquent, and that he cannot be rehabilitated within the exercise of the exclusive jurisdiction of the Juvenile Court. See *Kent* v. *United States* (1966), 383 U. S. 541, 16 L. Ed. 2d 84; *In re Whittington* (1969), 17 Ohio App. 2d 164, 245 N. E. 2d 364.

This is not to say that the act upon which a bind-over is predicated must be the same as that from which the finding of delinquency emanated, nor that the quantum of proof necessary to uphold every juvenile bind-over order is the same as that required to support a finding of delinquency.

For example, a child could be adjudged a delinquent on many grounds, including those enumerated in Section 2151.02, Revised Code, before the Juvenile Court even began consideration of whether he should be bound over under Section 2151.26, Revised Code. A child could have been found to be a delinquent in an entirely unrelated, prior occurrence, and then become involved in a matter which would fall within the purview of Section 2151.26, Revised Code.

A study of the Juvenile Code, as it existed immediately prior to November 19, 1969, fails to reveal a definite statement of the quantum of evidence necessary to sustain a bind-over order under Section 2151.26, Revised Code. However, that section placed the widest discretion in the Juvenile Court with respect to the entry of such an order. In line therewith, and noting the related test of probable cause recently adopted by the General Assembly (Section 2151.26(A)(2), Revised Code, effective November 19, 1969), we are of the opinion that where the evidence before a Juvenile Court was sufficient to support a finding that there was probable cause to believe a delinquent child had committed an act which could have been a felony if committed by an adult, that court could have properly bound the child over under Section 2151.26, Revised Code.

Appellee, in his cross-appeal, suggests that the Juvenile Court failed to find that he was, in fact, delinquent; that the record in this case fails to contain sufficient evidence that he should be adjudged delinquent; that the bind-over order must be supported by clear and convincing evidence; that nothing in the record supports the conclusion that he was not amenable to rehabilitation; and that he was denied due process of law.

Our examination of the record in the instant case reveals that the Juvenile Court had sufficient evidence to substantiate its conclusion that the appellee was not subject to rehabilitation under presently existing means. Although the Juvenile Court did make such a finding, it failed to make the necessary *prior* determination that the appellee was a delinquent child.

Appellee argues also that he was denied due process in that he was not given specific notice as to what type of proceeding was to take place at the August 15, 1968, hearing. He contends that *In re Gault* (1967), 387 U. S. 1, 18 L. Ed. 2d 527, requires notice, and that notice of a hearing on a delinquency petition is not sufficient notice of a felony bind-over hearing. *In re Gault, supra,* only requires notice of the hearing on the complaint.

The record in this case clearly shows that two weeks before the actual hearing appellee was brought before the court; that appellee was then represented by counsel; that appellee and counsel were both apprised of the charges; that the court ordered appellee to submit to clinical testing as required by Section 2151.26, Revised Code; and that the prosecutor indicated to the court and appellee that he sought the binding over of appellee to the Court of Common Pleas pursuant to Section 2151.26, Revised Code. There is no doubt that appellee had sufficient notice and adequate time to prepare for the hearing.

Appellee argues that the Juvenile Court erred in admitting the arresting officer's testimony about oral statements made by the appellee before there was evidence to establish a *corpus delicti.* The record indicates that the judge allowed the arresting officer to be withdrawn temporarily so that independent evidence of the *corpus delicti* could be established. Although *In re Gault, supra,* requires procedural regularity in the Juvenile Court, the introduction of testimony out of order is a matter that rests within the sound discretion of a trial court, and as long as no abuse of that discretion to the prejudice of the accused is shown, no error intervenes. See *Holt* v. *State* (1923), 107 Ohio St. 307, 140 N. E. 349. We find no such abuse in the case at bar.

Appellee argues that he was denied a fair and impartial trier of fact and due process of law when the judge, at the conclusion of the hearing, stated that it was "regrettable, although understandable, that counsel doesn't have the * * * [appellee] participate in the hearing." Appel-

lee argues that these comments are proscribed by *Griffin* v. *California* (1965), 380 U. S. 609, 14 L. Ed. 2d 106, rehearing denied, 381 U. S. 957, 14 L. Ed. 2d 730, and fly in the face of the dictates of *In re Gault, supra.* We disagree. The decision in *Griffin* concerns "a rule of evidence that allows the state the privilege of tendering to the jury for its consideration the failure of the accused to testify." 380 U. S., at 613. Nothing in the record before us indicates that the judge's factual determinations were in any way based upon the appellee's failure to testify.

Finally, appellee argues that there was not probable cause to substantiate his warrantless arrest and that the subsequent search of his person was, therefore, illegal. The record clearly shows that on the evening of July 23, 1968, a police officer was shot by a sniper in front of a building at 12312 Auburndale Avenue, while investigating reports of shootings and snipers. Patrolman Phillips, the arresting officer, testified that he and another officer were assigned to report to the National Guard Headquarters on the morning of July 24. They were placed in a National Guard armored personnel carrier, also referred to as a tank, and transported to 12314 Auburndale to assist in flushing out snipers reportedly hiding in the building at that address. Prior to the officer's arrival, it had been determined that 12312 Auburndale was the building where the initial sniping had occurred and that building had been teargassed by the police in an attempt to clear out the snipers.

When the personnel carrier arrived, it was backed up to the front door of the building at 12314, the ramp was lowered, and the officers went into the building. The officers found the upstairs front suite in the building vacant and proceeded to the upstairs rear suite, where, after knocking and identifying themselves as police officers, they were admitted by a man who gave them permission to search the apartment. Appellee and another youth were discovered and, when questioned by the officers, stated that they lived in the suite. This was denied by the occupant of the suite,

who told the officers that the appellee was his neighbor and that both boys had come to his home early that morning.

Appellee and the other youth were then arrested and informed of their constitutional rights. A search of appellee's pockets revealed that he was in possession of two rounds of 30-caliber Carbine ammunition. With the express consent of the occupant of the apartment, and at his directions, the officers then searched the suite and found three weapons under a bed, including a 30-caliber Carbine.

In consideration of all the circumstances attendant with this arrest, we hold that there was probable cause therefor and that there was a lawful search of appellee's person and the premises.

For the reasons stated, the judgment of the Court of Appeals is affirmed and the cause is remanded to the Juvenile Court for further proceedings consistent with this decision.

*Judgment accordingly.*

TAFT, C. J., COLE, O'NEILL, SCHNEIDER, DUNCAN and LEACH, JJ., concur.

COLE, J., of the Third Appellate District, sitting for MATTHIAS, J.

LEACH, J., of the Tenth Appellate District, sitting for CORRIGAN, J.