THE STATE OF OHIO, APPELLEE, *v.* SIMS, APPELLANT.▌

[Cite as State v. Sims (1977), 55 Ohio App. 2d 285.]

(No. 36495—Decided December 8, 1977.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. Michael C. Hennenberg* for appellant.

STILLMAN, J. This case originates from proceedings which took place in the Juvenile Court of Cuyahoga County, Case No. 199-928, on February 27, 1962. A citation and warrant were issued on that date against the appellant, James Sims. On March 27, 1962, following a proceeding in the Juvenile Court, it was determined that the appellant be bound over to the Court of Common Pleas in accordance with the then current provisions of R. C. 2151.26. On April 11, 1962, the Grand Jury of Cuyahoga County indicted the appellant on two counts of first degree murder. On June 7, 1962, after waiving a jury trial, the appellant and a codefendant appeared before a three judge court in Common Pleas Case No. 76263. Both the appellant and his codefendant entered pleas of guilty and were tried by the judicial panel in accordance with the provisions of R. C. 2945.06.

The trial concluded with the conviction of both defendants on both counts of first degree murder. The court, recommending mercy, sentenced each defendant to life terms on each count to be served consecutively, with the defendants also being ordered to serve in solitary confinement for each year of their sentences from February 12 through February 23. On July 24, 1962, motions for reconsideration of the sentence were filed by both defendants and were rejected by the court. On June 29, 1970, a motion by the appellant to vacate and set aside the judgment was similarly denied. On May 17, 1976, the appellant filed a *pro se* motion for leave to appeal together with his affidavit of indigency and a notice of appeal to this court. These motions were duly granted and the case is before this court accordingly.

The appellant, James Sims, was 17 years of age at the time of his arrest in 1962. He was charged with the murder of William C. Beasley on February 18, 1962, and was also accused of two armed robberies on February 16 and February 23, 1962. At the proceedings which took place on March 28, 1962, the Juvenile Court bound the appellant over to the Court of Common Pleas. No transcript of the proceedings is available, and it does not appear

that any stenographic record was ever made. Following the bind-over and the Grand Jury indictment, the appellant was tried before the Common Pleas Court of Cuyahoga County with appointed counsel defending. The three judge panel consisted of Judges J. J. P. Corrigan, Charles White and Earl Hoover. Mr. Norman Minor, the appellant's counsel, withdrew an earlier "not guilty" plea and entered a plea of "guilty" to homicide generally. The court accepted the "guilty" plea and tried the case on the issue of degree of culpability. The uncontradicted evidence indicated that the appellant had not fired the three fatal shots into the body of William Beasley, but that his codefendant had done so. The appellant's testimony on his own behalf constituted admissions of participation in the crime charged as well as in various offenses introduced under the "Similar Acts Statute," R. C. 2945.59.

The court found both defendants guilty, and it is from this finding that the appellant has appealed, assigning two errors:

"First Assignment of Error:

"The appellant was denied due process of law as the result of having been twice put in jeopardy, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Art. I, § 10 of the Ohio Constitution, and therefore, his conviction in his second trial must be reversed as a matter of law.

"Second Assignment of Error:

"The trial court erred in accepting the appellant's guilty plea without making any determination as to whether such plea was knowingly, intelligently and voluntarily made, in violation of the appellant's rights to a trial by jury and to face his accusers, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Art. 1, §10 of the Ohio Constitution."

The first assignment of error is based upon the view that the proceedings before the Juvenile Court had placed the appellant in jeopardy and that his subsequent conviction by the Court of Common Pleas was therefore a viola-

tion of the Fifth and Fourteenth Amendments to the Constitution of the United States. *Benton* v. *Maryland* (1969), 395 U. S. 784, 794.

The appellant relies primarily on *Breed* v. *Jones* (1975), 421 U. S. 519. In *Breed, supra,* the Supreme Court of the United States found that the Juvenile Court of Los Angeles County had conducted a "jurisdictional or adjudicatory hearing" prior to binding the defendant over to be tried as an adult. Testimony was taken from the prosecution's witnesses and the respondent by the Juvenile Court. A "dispositional hearing" was also ordered, and the juvenile was ordered detained for a two week period pending such a subsequent hearing. At the latter hearing, the Juvenile Court indicated its intention to find the juvenile "not amenable to the care, treatment and training program available through the facilities of the Juvenile Courts". The juvenile's counsel requested a continuance which was granted for one week. Upon the expiration of that period, after considering the report of a probation officer, the court declared the juvenile unfit for treatment as such and ordered that he be prosecuted as an adult. The juvenile was subsequently tried and found guilty of the charges against him.

The language of the United States Supreme Court in finding double jeopardy is illuminating in this case. The court declared at page 529:

"[T]here is little to distinguish an adjudicatory hearing such as was held in this case from a traditional criminal prosecution * * *."

"Jeopardy attached when respondent was 'put to trial before the trier of the facts,' 400 U. S., at 479, 91 S. Ct., at 554, that is, when the Juvenile Court, as the trier of the facts, began to hear evidence. See *Serfass* v. *United States,* 420 U. S., at 388, 95 S. Ct., at 1062." *Id.,* at 531.

In a significant footnote, the court stated:

"We note that nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding. See *Collins* v. *Loisel,* 262 U. S. 426, 429, 43 S. Ct. 618, 625, 67 L. Ed. 1062 (1923); *Serfass*

v. *United States*, 420 U. S. 377, 391-392, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975). The instant case is not one in which the judicial determination was simply a finding of, e. g., probable cause. Rather, it was an adjudication that re-spondent had violated a criminal statute." *Id.*, at 538 n. 18.

Applying the principles enunciated in *Breed, supra,* to the facts of the instant case, we must note that the court docket is our only datum for describing the proceedings which occurred before the Juvenile Court of Cuyahoga County. Because of its significance in this case, we repro-duce it in full.

"2-27-62 Petition filed. Citation and warrant issued.

"2-27-62 To Court: This matter came on for hearing this twenty-seventh day of February, 1962, before the Hon-orable Albert A. Woldman upon the application of Cleve-land Police Department, the Court being fully advised of the circumstances, permission is granted to the Cleveland Police Department to finger print and photograph the minor herein in accordance with the provision of Section 2151.31 Ohio Revised Code within the next ten (10) days.

"2-28-62 Warrant returned and filed.

"3-19-62 Citation returned and filed.

"3-27-62 To Court: This twenty-seventh day of March, 1962, James Samuel Sims, a minor of about the age of seventeen years, came before the Honorable Albert A. Woldman upon the petition of Charles R. Reynolds alleging that James Samuel Sims is a delinquent child in this: that on or about February 16, 1962, at 4502 St. Clair Avenue, Cleveland, Ohio, he did unlawfully, and by putting in fear while armed with a dangerous weapon, to wit, a pistol, rob from the person of one, Dorothy Kulas, cash in the approxi-mate amount of $1069.00, contrary to the statute in such case made and provided for and against the peace and dignity of the State of Ohio. That on or about February 18, 1962, at 3005 Woodhill Road, Cleveland, Ohio, he did unlawfully, purposely and while in the perpetration of a robbery, kill one, William C. Beasley, contrary to the form of the statute in such case made and provided for and against the peace and dignity of the State of Ohio. That on or about February 23, 1962, at 6938 Kinsman Road,

Cleveland, Ohio, he did unlawfully, and by putting in fear while armed with a dangerous weapon, to wit, a pistol, rob from the person of one, David Warren, cash in the approximate amount of $104.50, contrary to the form of the statute in such case made and provided for and against the peace and dignity of the State of Ohio. It appearing to the Court that said child has committed acts which, if committed by an adult, would be felonies a mental and physical examination having been made by duly qualified persons, as provided by statute, it is hereby ordered that pursuant to Section 2151.26 Ohio Revised Code the said James Samuel Sims be bound over to the Court of Common Pleas of Cuyahoga County, for further proceedings according to law. It is ordered that said James Samuel Sims be, and he hereby is, committed to the Jail of Cuyahoga County."

This docket demonstrates that the appellant came before the Juvenile Court upon a petition alleging that the appellant was delinquent, and further alleging the particulars of the charges filed against him. The court determined that there was an appearance of acts which would have been felonies if committed by an adult, and in accordance with the provisions of R. C. 2151.26, bound the appellant over to the Court of Common Pleas for further proceedings, committing the appellant to jail.

There is nowhere any indication that an "adjudicatory hearing or a jurisdictional hearing" was conducted on this occasion. There is no finding of delinquency, and there is no recitation of any evidence upon which such an adjudication could be premised. All that appears to have occurred is that the Juvenile Court arrived at a determination that there was an appearance of possible criminal action which properly and appropriately should be considered by the Court of Common Pleas of Cuyahoga County.

Counsel for the appellant has argued that R. C. 2151.26 required a *"finding* of delinquency" to substantiate a bindover to the Common Pleas Court. (Emphasis added.) There is no such specific finding in the transcript of this docket. Although our contemporary terminology of "probable cause" is not recited in the transcript of this proceed-

ing, it is clear from the context that the court determined this probability, and only this probability, at the proceedings of March 27, 1962.

The appellant cites *In Re Jackson* (1970), 21 Ohio St. 2d 215, to fortify his contention of double jeopardy. This case dealt with the propriety of binding a 16 year old child over to the Court of Common Pleas in 1968. The court determined that the failure of the Juvenile Court to find delinquency or capacity for rehabilitation prevented a bind-over to the Court of Common Pleas. The syllabus of this case recites:

"1. Pursuant to Section 2151.26, Revised Code, as it existed immediately prior to November 19, 1969, where a juvenile was charged with being a delinquent child, and where the Juvenile Court sought to bind that child over to the Court of Common Pleas, the child must first have been found to be a delinquent child; and, if so found, the Juvenile Court must also have found that the child could not be rehabilitated within the exercise of the exclusive jurisdiction of the Juvenile Court.

"2. Pursuant to Section 2151.26, Revised Code, as it existed immediately prior to November 19, 1969, where the evidence before a Juvenile Court was sufficient to support a finding that there was probable cause to believe a delinquent child had committed an act which could be a felony if committed by an adult, that court could properly bind the child over to the Court of Common Pleas."

It is significant in the *Jackson, supra,* case that the Juvenile Court record demonstrates an adjudicatory hearing with testimony presented to the court like that proscribed in *Breed* v. *Jones, supra.* There is no indication that such a hearing occurred in the instant case.

In the absence of any indication to the contrary, the proceedings of a court are presumed to be valid and regular. *State* v. *Ray* (1956), 102 Ohio App. 395. The Juvenile Court did nothing to place the appellant in any measure of jeopardy by reason of its conduct in this case. For this reason, we reject the first assignment of error.

The second assignment of error maintains that the trial court failed to determine whether the defendant's guilty

plea was knowingly, intelligently and voluntarily made.

It must be borne in mind that the proceedings in this case antedate current criminal rules relating to the acceptance of a guilty plea. The Ohio rule as stated in *State* v. *Piacella* (1971), 27 Ohio St. 2d 92, 96, indicates that a guilty plea has been voluntarily and intelligently made when the record clearly discloses that:

"(1) a guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) his advice was competent in light of the circumstances surrounding the plea; (4) the plea was made with the understanding of the nature of the charges; and, (5) the plea was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both. * * *"

Here the appellant was represented by experienced counsel and was being tried by a three judge court. There can be no doubt that his plea of guilty was entered with full knowledge of the consequences and was voluntarily made. The court addressed the appellant directly and at length and his counsel offered responses indicating that he had held conferences with the appellant and that the appellant had a clear understanding of the proceedings.

There is nothing in the record which substantiates an argument that the appellant was unaware of his rights. Although he did not himself respond in any audible fashion to the questions and statements directed to him by the court, he was specifically addressed in the following colloquy:

"Judge Corrigan: Mr. Minor.

"Mr. Minor: If the Court please, with reference to defendant Sims, he has hitherto entered a plea of not guilty to the indictment.

"At this time, with the Court's permission, we should like to withdraw that plea of not guilty and plead guilty to homicide generally.

"Judge Corrigan: That is a plea of guilty to the indictment?

"Mr. Minor: To homicide generally under the section which provides that a Court shall hear and determine the degree of homicide it is.

"Judge Corrigan: Yes, that is a plea of guilty to the indictment specifically.

"Mr. Minor: With all the included offenses.

"Judge Corrigan: Yes, all right.

"Now, Mr. Sims, will you stand up, please?

"Your attorney, Mr. Norman S. Minor, has just indicated to the Court that it is your desire to enter a plea of guilty to this indictment.

"Now, the Court must explain to you first that you are entitled to a jury trial under the Constitution of Ohio, and, secondly, that you are pleading guilty to a charge of first degree murder and that charge under the law of Ohio is a felony and carries with it a possible penalty of death in the electric chair or if mercy is recommended by the Court, to imprisonment for life in the penitentiary.

"Now, do you understand that?

"Mr. Minor: Judge, I wonder if we might approach the bench for a minute?

"Judge Corrigan: Yes.

"(Conference at the bench.)

"Mr. Minor: We are ready whenever the Court is ready.

"Judge Corrigan: Yes, sir, Mr. Minor.

"Mr. Minor: If the Court is ready to receive the plea now, our plea is guilty to homicide generally, Your Honor.

"Judge Corrigan: All right. That is under 2945.06.

"Mr. Minor: Yes, Judge.

"Judge Corrigan: And the defendant understands that that is a felony and it is up to the Court to determine the degree of the crime?

"Mr. Minor: Yes, Judge.

"Judge Corrigan: And he understands the punishments in connection with the various degrees of the crime?

"Mr. Minor: I'm quite sure he does.

"Judge Corrigan: All right, then. All right, the Court will accept the plea of guilty from the defendant James Sims."

In *State* v. *Stone* (1975), 43 Ohio St. 2d 163, the Supreme Court of Ohio declared:

"A defendant's plea of guilty in a felony case, before July 1, 1973, was voluntarily, knowingly and intelligently

made where the record affirmatively discloses that defendant was advised of the rights he was waiving by competent, privately retained counsel and, in part, by the trial court; that he understood the rights he was waiving, which fact was ascertained by the trial court in a personal inquiry of the defendant; and that he was motivated to do so by a desire to avoid a more severe penalty."

For these reasons, we reject the second assignment of error. The conviction of the appellant is therefore affirmed.

*Judgment affirmed.*

KRUPANSKY, J., concurs.
DAY, C. J., dissents.

DAY, C. J., dissenting. A petition was lodged against Defendant-Appellant James Sims (defendant) on February 27, 1962, in Juvenile Court. The defendant was seventeen. The petition alleged two instances of armed robbery and one instance of murder while in the perpetration of a robbery. A citation and warrant issued. On March 27, 1962, the defendant appeared before Juvenile Court for hearing on the petition. Defendant was bound over to the Court of Common Pleas for trial as an adult.

Defendant was subsequently indicted on two counts of first degree murder. Both counts named the same victim. One count charged murder with "premeditated malice"; the other charged murder while in the perpetration of a robbery.

On June 7, 1962, defendant plead guilty to both counts of first degree murder, and opted for further proceedings under former R. C. 2945.06, which provided in relevant part:

"* * * Jurisdiction of judge when jury trial is waived; three-judge court. * * *" * * *

"* * * If the accused pleads guilty of murder in the first degree, a court composed of three judges shall examine the witnesses, determine the degree of crime, and pronounce sentence accordingly.¹ In rendering judgment of conviction of an offense punishable by death upon plea of

---

¹Despite a defendant's plea to first degree murder the court could find the offense to be of lower degree.

guilty * * * the court may extend mercy and reduce the punishment for such offense to life imprisonment in like manner as upon recommendation of mercy by a jury * * *."

The panel of judges found defendant guilty of murder in the first degree on both counts and recommended mercy as to both. The sentences, to be served consecutively, were for life with twelve days of each year ordered spent in solitary confinement.

Defendant filed a late appeal by leave of court. He assigned two errors. My view of the correct disposition of Assignment No. 1 makes it unnecessary to consider the second assignment. I would find No. 1 well taken and would reverse the judgment and discharge defendant.

*Assignment of Error No. 1:*

"The appellant was denied due process of law as the result of having been twice put in jeopardy, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Art. 1, §10 of the Ohio Constitution, and therefore, his conviction in his second trial must be reversed as a matter of law."

The prohibition against double jeopardy in the Fifth Amendment to the United States Constitution was held applicable to state prosecutions in 1969, *Benton* v. *Maryland* (1969), 395 U. S. 784, 794.

More recently, the United States Supreme Court has held that jeopardy attaches at juvenile court adjudicatory hearings, *Breed* v. *Jones* (1975), 421 U. S. 519, 531. As a result the Fifth Amendment prohibition against double jeopardy bars the trial of a juvenile as an adult when the juvenile has been exposed to a juvenile adjudicatory hearing prior to trial as an adult.

Furthermore, jeopardy attaches not with the rendering of judgment by the juvenile judge, but "when the Juvenile Court, as the trier of the facts, [begins] to hear the evidence," *id.*, 421 U. S. at 531. For that reason, the fact that no adjudication ultimately issues from such a hearing, is immaterial. Assuming an adjudicatory hearing is involved, jeopardy begins when the hearing does.[a]

---

[a]See *State* v. *Eppinger*, Eighth Appellate District, No. 35489, decided 1977, at 3. "It is not necessary for the juvenile court to enter

The hearing in the instant case was held pursuant to R. C. 2151.26 (now repealed). Speaking through its journal the Judge said:

"This twenty-seventh day of March, 1962, James Samuel Sims, a minor of about the age of seventeen years, came before the Honorable Albert A. Woldman upon the petition of Charles H. Reynolds alleging that James Sims is a delinquent child in this:" * * *

"It appearing to the Court that said child has committed acts which, if committed by an adult, would be felonies a mental and physical examination having been made by duly qualified persons, as provided by statute, it is hereby ordered that pursuant to Section 2151.26 Ohio Revised Code the said James Samuel Sims be bound over to the Court of Common Pleas of Cuyahoga County, for further proceedings according to law."

At the time of decision in 1962, R. C. 2151.26 read:

"* * * Child charged with felony * * *.

"*In any case involving a delinquent* child under sections 2151.01 to 2151.54, inclusive, of the Revised Code, who has committed an act which could be a felony if committed by an adult, the juvenile judge, after full investigation and after a mental and physical examination of such child has been made by the bureau of juvenile research, or by some other public or private agency, or by a person qualified to make such examination, *may order that such child enter into a recognizance* with good and sufficient surety, subject to the approval of the judge, *for this appearance before the court of common pleas* at the next term thereof, for such disposition as the court of common pleas is authorized to make for a like act committed by an adult; or the judge may exercise the other powers conferred in such sections in disposing of such case." (Emphasis supplied.)

The Supreme Court of Ohio has held that R. C. 2151.26 (prior to amendment in 1969) made a finding of delinquency a condition precedent to bindover, *In Re Jackson* (1970), 21 Ohio St. 2d 215, 218.

a judgment which determines whether a defendant is or is not a juvenile delinquent before jeopardy attaches."

The trial judge in the instant case must be presumed to have known this statutory requirement. When the instant bindover is considered in this light the court's meaning in its journal is plain. The words "It appearing to the Court that said child has committed acts which, if committed by an adult, would be felonies * * *" followed by a bindover must mean the court has made a finding of delinquency though it is described somewhat ambiguously. Because the court made a finding, it must have taken evidence. Otherwise, what is the source of the "appearing" that persuaded the judge to bindover? I am unwilling to guess that the court acted on mere allegations. This conclusion is buttressed by the presumption of legality which accompanies judicial rulings unless rebutted. To assume without supporting evidence that the presumption is dissipated is not to rebut the presumption, but to invert it.

Thus, the bindover hearing must be considered more than a probable cause hearing unless the bindover is in violation of the statute. So far, no one has even suggested that.

If these conclusions are correct, the hearing on March 27, 1962, put the defendant in jeopardy. The felony proceeding was the second jeopardy and the instant case fits squarely within *Breed* v. *Jones*. The only remaining consideration is whether the latter case is retroactive. One might rely on the implications of *Linkeletter* v. *Walker* (1965), 381 U. S. 618, analysis (whether the basic fairness of the trial was affected) or the more positive implication in *Robinson* v. *Neil* (1973), 409 U. S. 505 (the guarantee against double jeopardy is not directed at a mere procedural defect aimed at some collateral purpose, but rather reaching basic fairness) to find retroactivity. However, the Circuit Court of Appeals for the Sixth Circuit has specifically ruled that *Breed* is retroactive, *Holt* v. *Black* (1977), 550 F. 2d 1061, 1062, 1065. Because single jeopardy is a basic constitutional right, retroactivity for the *Breed* doctrine is not only appropriate, but required.