No. 80–472. ENGLE, CORRECTIONAL SUPERINTENDENT *v.*
SIMS. C. A. 6th Cir. Motion of respondent for leave to
proceed *in forma pauperis* granted. Certiorari denied. 

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and
JUSTICE BLACKMUN join, dissenting.

This Court has been asked to review a determination by a
Federal Court of Appeals that a state-court murder convic-
tion was obtained in violation of the Double Jeopardy Clause

of the Fifth Amendment. Because I think the conclusion of the Court of Appeals is wrong and has erroneously expanded the role that court was to play in providing habeas corpus review of state-court criminal convictions, I dissent from denial of the petition for certiorari.

On February 27, 1962, the Juvenile Division of the Cuyahoga County, Ohio, Court of Common Pleas issued a citation and warrant against the respondent alleging that he had participated in several armed robberies, one of which resulted in a death. Respondent was taken into custody and brought before the Juvenile Court on March 27, 1962, for a hearing; no transcript or record of that hearing was made. In accordance with then Ohio Rev. Code Ann. § 2151.26 (1954),* the Juvenile Court decided to bind respondent over to the Criminal Division of the Court of Common Pleas for trial as an adult. This determination was entered on the court's docket as a journal entry which is the only record of what transpired at that hearing. The journal entry reads:

> "TO COURT: This twenty-seventh day of March, 1962, James Samuel Sims, a minor of about the age of seventeen years, came before the Honorable Albert A. Woldman upon the petition of Charles R. Reynolds alleging that James Samuel Sims is a delinquent child in this:

---

*At the time of the juvenile proceedings afforded respondent in this case, Ohio Rev. Code Ann. § 2151.26 (1954) provided:

"In any case involving a delinquent child under sections 2151.01 to 2151.54, inclusive, of the Revised Code, who has committed an act which could be a felony if committed by an adult, the juvenile judge, after full investigation and after a mental and physical examination of such child has been made by the bureau of juvenile research, or by some other public or private agency, or by a person qualified to make such examination, may order that such child enter into a recognizance with good and sufficient surety, subject to the approval of the judge, for his appearance before the court of common pleas at the next term thereof, for such disposition as the court of common pleas is authorized to make for a like act committed by an adult; or the judge may exercise the other powers conferred in such sections in disposing of such case."

that on or about February 16, 1962, at 4502 St. Clair Avenue, Cleveland, Ohio, he did unlawfully, and by putting in fear while armed with a dangerous weapon, to wit, a pistol, rob from the person of one, Dorothy Kulas, cash in the approximate amount of $1069.00, contrary to the statute in such case made and provided for and against the peace and dignity of the State of Ohio. That on or about February 18, 1962, at 3005 Woodhill Road, Cleveland, Ohio, he did unlawfully, purposely and while in the perpetration of a robbery, kill one, William C. Beasley, contrary to the form of the statute in such case made and provided for and against the peace and dignity of the State of Ohio. That on or about February 23, 1962, at 6938 Kinsman Road, Cleveland, Ohio, he did unlawfully, and by putting in fear while armed with a dangerous weapon, to wit, a pistol, rob from the person of one, David Warren, cash in the approximate amount of $104.50, contrary to the form of the statute in such case made and provided for and against the peace and dignity of the State of Ohio. *It appearing to the Court that said child has committed acts which, if committed by an adult, would be felonies, a mental and physical examination having been made by duly qualified persons as provided by statute, it is hereby ordered that pursuant to Section 2151.26 Ohio Revised Code the said James Samuel Sims be bound over to the Court of Common Pleas of Cuyahoga County for further proceedings according to law. It is ordered that said James Samuel Sims be, and he hereby is, committed to the jail of Cuyahoga County.*" 619 F. 2d 598, 599 (1980). (Emphasis added.)

Following this journal entry, respondent was indicted on two counts of first-degree murder. Respondent pleaded not guilty, but later withdrew his plea and entered a plea of guilty to homicide generally and waived trial by jury. Pursuant to

then-current Ohio law, respondent was tried before a three-judge court solely on the issue of the degree of culpability. He was found guilty of first-degree murder on both counts of the indictment and sentenced to two consecutive terms of life imprisonment.

On May 17, 1976, respondent filed a *pro se* motion for leave to appeal with the Ohio Eighth District Court of Appeals seeking to challenge his conviction on the ground that he had been placed twice in jeopardy by being tried and convicted as an adult in criminal court. The Court of Appeals granted his motion, appointed counsel, but later found no error and affirmed the convictions and sentences. With regard to the double jeopardy claim, the court acknowledged that this Court held in *Breed* v. *Jones,* 421 U. S. 519 (1975), that a juvenile who has been subject to a "jurisdictional or adjudicatory hearing" in a juvenile court before being bound over to be tried as an adult is placed twice in jeopardy by the later criminal trial. However, this Court also stated that it was not foreclosing States from requiring a finding of probable cause as a prerequisite for transfer. *Id.,* at 538, n. 18. Applying the principles set forth in *Breed,* the Ohio Court of Appeals found that there was no indication that an adjudicatory hearing or a jurisdictional hearing was conducted in this case. The court explained:

> "There is no finding of delinquency, and there is no recitation of any evidence upon which such an adjudication could be premised. All that appears to have occurred is that the Juvenile Court arrived at a determination that there was an appearance of possible criminal action which properly and appropriately should be considered by the Court of Common Pleas of Cuyahoga County." *State* v. *Sims,* 55 Ohio App. 2d 285, 290, 380 N. E. 2d 1350, 1353 (1977).

After the Ohio Supreme Court dismissed respondent's appeal for failure to state a substantial constitutional question,

respondent petitioned for a writ of habeas corpus in the United States District Court for the Northern District of Ohio again alleging a double jeopardy claim. The District Court denied the petition. The court held that the journal entry lent little support to respondent's position because it contained neither a specific finding that respondent committed any of the criminal acts alleged nor a recitation of evidence. The court also rejected the respondent's contention that because the journal entry purported to be issued pursuant to Ohio Rev. Code Ann. § 2151.26 (1954), compliance with that statute required that a juvenile be formally adjudged delinquent before being bound over to be tried as an adult. In rejecting this contention, the District Court explained that the proper operation and construction of § 2151.26 was largely unsettled prior to the clarification provided by the Ohio Supreme Court in *In re Jackson,* 21 Ohio St. 2d 215, 257 N. E. 2d 74 (1970). Prior to that 1970 decision, many Juvenile Courts bound over only on a determination of probable cause. Given the uncertainty of the law surrounding § 2151.26 prior to the *Jackson* decision, the District Court was unwilling to assume that an adjudication of delinquency was made at respondent's 1962 hearing. The pre-*Jackson* practice of binding over on a probable-cause determination, coupled with the absence of any specific factual findings indicative of adjudication, strongly suggests that respondent's juvenile hearing was of a nonadjudicatory nature.

The Court of Appeals for the Sixth Circuit reversed. 619 F. 2d 598 (1980). According to the Court of Appeals, the District Court's reasoning overlooks the essential fact that the Juvenile Judge was empowered to impose sanctions at the 1962 hearing, that evidence was taken, and that the liberty and reputation of the respondent were put in risk at that time. The rendering of a final judgment is immaterial to the applicability of the Double Jeopardy Clause and therefore the much disputed meaning of the Juvenile Court's jour-

nal entry is irrelevant and unnecessary to the disposition of the case. The court stated:

"What actually occurred at the March 27, 1962 hearing is also insignificant. Once the Juvenile Court, possessing the jurisdiction and power to enter final orders levying a wide range of possible sanctions, began a hearing, not limited in scope by statute to a preliminary or probable cause hearing, jeopardy attached and appellant possessed the constitutional right to have the Juvenile Court, as the original trier of fact, determine his fate." *Id.*, at 605.

Subsequently, the Court of Appeals denied a petition for rehearing, stating that petitioner was in error in his contention that the court's opinion would require the release of every juvenile who was bound over according to the procedures of former Ohio Rev. Code Ann. § 2151.26 (1954). The court explained that it was not deciding that there would be a double jeopardy violation where the record of the Juvenile Court hearing plainly established that the hearing was limited to a determination of probable cause.

The decision of the Court of Appeals, in my view, merits review if not outright summary reversal for several reasons. In the first place, any petition for habeas corpus which seeks to attack a juvenile journal entry, or to construe it, by means of a federal habeas petition filed 16 years later should receive the strictest scrutiny from the federal courts who are asked to intervene and set aside a state-court conviction presumptively valid on its face. This was commendably recognized by the District Court when it said:

"Inquiry concerning the nature of the March 27, 1962 hearing by the Juvenile Court is hindered by the absence of any transcript of the proceeding." App. to Pet. for Cert. A–20.

A federal court in this situation should also not lose sight of the fact that it is the habeas applicant who has the burden of

proving a constitutional violation, see *Sumner* v. *Mata,* 449 U. S. 539 (1981), and that no system of justice which gives both society and a defendant their due is aided by attempting to reconstruct or re-evaluate events that took place decades ago, as if it were an archaeological expedition, rather than an exercise in the administration of justice.

Public confidence that justice is administered fairly between the defendant and the State is not bolstered by the fact that the opinion of the Court of Appeals can quite reasonably be read as inconsistent on its face with its later order denying the petition for rehearing. In that order, the court stated that a double jeopardy violation would not arise if it were clear that a probable-cause determination, as opposed to a delinquency determination, was made at the bindover hearing. This is in direct contradiction to the analysis the court employed in its original opinion where it stated that it need not inquire into what occurred at the 1962 hearing because once the Juvenile Court began a hearing which was not limited by statute to a probable-cause determination, jeopardy attached.

To the extent the court meant what it said in its original opinion, the decision is of significant importance. First, to reach its conclusion the court had to make an assessment as to the type of determination a juvenile court was required to make in 1962 prior to binding over a juvenile for trial as an adult. The court held that an Ohio juvenile court was required to make a "delinquency" determination at such a hearing and it reached this result even though the other courts which addressed the issue, including the Ohio state courts, all concluded to the contrary, explaining that the law on this point was not settled until the 1970 decision in *Jackson.* The prior uncertainty of the law on this point (and consequently the Court of Appeals' error) is most clearly illustrated by the fact that *Jackson* itself affirmed a lower court opinion reversing a juvenile's bindover on a finding of probable cause. It is patently obvious to me that the Ohio state courts are much

more competent than a federal habeas court to determine what Ohio law required of juvenile courts in 1962.

The assumption, made cavalierly in my opinion by the Court of Appeals, that a double jeopardy violation arose because the Ohio Juvenile Court was required to make a delinquency determination prior to binding the juvenile over for trial as an adult, goes far beyond what we held in *Breed* v. *Jones,* 421 U. S. 519 (1975). If the decision remains the law of the Sixth Circuit, and if we deny certiorari there is no reason to believe that other Circuits will not follow it, and it may well require the release of every juvenile bound over under the same statute and then subsequently convicted as an adult. If we dealt here with the fate of only one criminal defendant, it would not be worth the time of this Court to inquire into the correctness of the decision of the Court of Appeals. But a decision that appears to require what may be the massive release of large numbers of similarly situated convicted criminals should not occur without this Court's first reviewing the constitutional underpinnings of such decision.

The District Court, sitting as it did with a District Judge far more familiar with Ohio practice than the three judges of the Court of Appeals only one of whom is an Ohioan, was surely correct in its unwillingness to assume that an adjudication of delinquency was made at respondent's 1962 hearing. Indeed, as the District Court stated:

> "The pre-*In re Jackson* practice of binding over on a probable cause determination, coupled with the absence of any specific factual findings indicative of an adjudication, discussed *infra,* strongly suggest that petitioner's juvenile hearing was of a non-adjudicatory nature." App. to Pet. for Cert. A–23.

For the reasons previously stated, I would grant certiorari to review what seems to me an abuse of the "Great Writ" by the Court of Appeals for the Sixth Circuit. Respondent was indicted by the Cuyahoga County grand jury on two counts

of first-degree murder 19 years ago, and although first pleading not guilty to these charges, later withdrew this plea and entered a plea of guilty to homicide generally and waived a trial by jury. He was then tried before a three-judge court solely on the degree of culpability according to then-current Ohio law, and was found guilty and sentenced to two consecutive terms of life imprisonment on the basis of his plea. It was not until 14 years later that it occurred to him that these Ohio proceedings violated the double jeopardy provision of the Fifth and Fourteenth Amendments, and then he unsuccessfully sought relief in the Ohio Court of Appeals, the Supreme Court of Ohio, and the United States District Court for the Northern District of Ohio. It cannot be fairly said that the opinion of the Court of Appeals will affect only respondent, but it can be fairly said that respondent has set in motion legal machinery, both state and federal, far exceeding either the merits of his claim or the proper allocation of judicial resources in a system of justice which recognizes both the interests of society and that of the defendant.