**Robert Thomas HALL, Appellant,**

v.

**Arthur L. McKENZIE, Acting Warden, West Virginia Maximum Security Prison, Appellee.**

**No. 77–2050.**

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1978.

Decided May 18, 1978.

---

Ray A. Byrd, Wheeling, W. Va. (Schrader, Stamp & Recht, Wheeling, W. Va., on brief), for appellant.

Pamela Tarr, Asst. Atty. Gen., Charleston, W. Va. (Chauncey H. Browning, Jr., Atty. Gen., and Betty L. Caplan, Asst. Atty. Gen., Charleston, W. Va., on brief), for appellee.

Before WINTER and HALL, Circuit Judges, and FIELD, Senior Circuit Judge.

WINTER, Circuit Judge:

Robert Thomas Hall appeals from the denial of his petition for a writ of habeas corpus. His claim to the writ was grounded principally on the allegation that the West Virginia rape conviction for which he is now incarcerated was obtained in violation of the double jeopardy clause because he had already been placed in jeopardy at the juvenile hearing convened to determine whether to transfer his case to a court of general jurisdiction. We conclude that, under West Virginia law, Hall was not placed in jeopardy by his appearance before the juvenile court because that court lacked jurisdiction over Hall's case except to transfer it. Finding no merit in this or any of Hall's other claims, we affirm.

## I.

Hall was arrested and charged with forcible rape on March 27, 1974. Because he

was seventeen at the time of the alleged assault, the case was referred to the juvenile court of Ohio County, West Virginia. On August 13, 1974, the juvenile court held a hearing to determine whether to transfer the case to a court of general jurisdiction so that Hall could be tried on criminal charges as an adult. The sole witness at this hearing was the alleged victim, who described the rape and identified Hall as her assailant. On September 5, 1974, the juvenile court issued an order directing that the case be transferred to the intermediate court of Ohio County for presentment to a grand jury. Hall was eventually indicted for forcible rape, and on June 11, 1975, he entered a plea of guilty. In keeping with a plea agreement, he was given a sentence of between ten and twenty years.

After exhausting state remedies, he filed a petition for habeas corpus relief claiming that his conviction had been obtained in violation of the double jeopardy clause. When the district court declined to issue the writ, this appeal followed.

## II.

Hall bases his double jeopardy claim on *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). The double jeopardy issue in *Breed* arose from the appearance of a California juvenile who was accused of armed robbery at a hearing to determine whether he was subject to the jurisdiction of the juvenile court. Because the applicable California statute extended juvenile jurisdiction to persons under twenty-one who had violated a criminal statute, this inquiry entailed an adjudication of whether the accused had actually committed the robbery. Two prosecution witnesses and Jones, the accused, testified at the jurisdictional hearing, after which the court ruled that the allegation of criminal conduct necessary to establish jurisdiction was true. Next, Jones appeared at a second hearing to decide the disposition of his case.[1] Finding that Jones would not benefit from the special treatment offered by the juvenile system, the juvenile court ordered Jones' case transferred to a court of general jurisdiction, where he was eventually convicted of armed robbery. On collateral attack, the Supreme Court invalidated his conviction. It held that criminal prosecutions were barred by double jeopardy where there had already been juvenile proceedings which had resulted in an adjudication that the juvenile had committed the criminal acts in question and which had subjected the juvenile to possible stigma or deprivation of liberty. 421 U.S. at 529, 95 S.Ct. 1779.

The Court stressed that the *Breed* decision was not meant to preclude hearings on the question of whether to transfer a juvenile to a court of general jurisdiction. Rather, the only requirement was that

whatever the relevant criteria, and whatever the evidence demanded, a State determine whether it wants to treat a juvenile within the juvenile-court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law and in a substantial deprivation of liberty, rather than subject him to the expense, delay, strain, and embarrassment of two such proceedings.

421 U.S. at 537–38, 95 S.Ct. at 1790. In particular, the Court noted that, without transgressing the guarantee against double jeopardy, states might still require, as a prerequisite to transfer, substantial evidence that the juvenile committed the offense charged, so long as the probable cause determination was not made in an adjudicatory proceeding. 421 U.S. at 538 n.18, 95 S.Ct. at 1790.

Hall urges that *Breed* mandates the granting of the writ in this case. His theory is that the transfer hearing in this case, like the initial adjudicatory hearing in *Breed*, placed him in jeopardy by subjecting him to the possible adjudication of the criminality of his conduct and, concomitantly, to the full range of juvenile sanctions. That the actual hearing in this case did neither of

---

1. Several options were available to the court. It might place the juvenile on probation or assign him to a detention center. While both involve some restraint, the latter choice obviously would result in a significantly greater deprivation of liberty.

these does not, in his view, remove the jeopardy because the potential was there.

The flaw in Hall's argument is that it fails to take into account § 49–5–3 of the West Virginia Juvenile Proceedings Article. That section, as written at the time relevant to this case,[2] provided:

> *Except as to a violation of law which if committed by an adult would be a capital offense,* the [juvenile] court shall [have exclusive jurisdiction to] hear and determine criminal charges . . . against a person who is under eighteen years of age at the time of the alleged offense. (Emphasis added.)

Although this language might conceivably be read to establish concurrent jurisdiction over capital offenses committed by a juvenile, · the West Virginia Supreme Court has ruled that § 49–5–3 denied juvenile courts jurisdiction over capital offenses. *Hinkle v. Skeen,* 138 W.Va. 116, 75 S.E.2d 223, 227 (1953), *cert. denied,* 345 U.S. 967, 73 S.Ct. 954, 97 L.Ed. 1385 (1953). *See Lycans v. Bordenkircher,* 222 S.E.2d 14, 17, 18 (W. Va. 1975). This means that when a juvenile court determines that the juvenile before it is accused of committing a capital offense, it lacks power either to adjudicate the juvenile a delinquent or to make any disposition of his case other than to transfer it to a court of general jurisdiction.

Because forcible rape was a capital offense at the time of the arrest here,[3] Hall's case came within the operation of § 49–5–3. Thus, contrary to Hall's assertions, the juvenile proceeding that he attended did not threaten him with an adjudication of criminal conduct or with the possibility of a substantial deprivation of liberty: the court lacked jurisdiction to accomplish either of those objects. Once the lack of jurisdiction ·is established, Hall's argument falls, for it is settled that an accused cannot be placed in jeopardy by a court lacking jurisdiction to decide his case. *See United States v. Ball,* 163 U.S. 662, 669, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); *Nottingham v. Zahradnick,* 573 F.2d 193, 194 (4 Cir. 1977).

Moreover, it is evident that the transfer hearing about which Hall complains sought only to ascertain whether there was some evidence that Hall had committed a capital offense. Unlike the adjudicatory hearing in *Breed,* only one witness testified and the juvenile court reached no conclusion concerning the truth of the allegations. *Breed* expressly authorizes such probable cause inquiries in connection with transfer proceedings, and Hall has not persuaded us that the Supreme Court erred in approving this practice.

## III.

Hall's other contentions merit only summary treatment. We agree with the district court that Hall's guilty plea in the court of general jurisdiction forecloses his attack on § 49–5–3 for failure to set forth standards to guide the juvenile court in determining when a transfer of jurisdiction should take place. *Brown v. Cox,* 481 F.2d 622, 627–28 n.16 (4 Cir. 1963). More importantly, in the context of the instant case, we think that the juvenile court had no discretion, and no determination to make, with regard to the transfer of jurisdiction; the transfer was required.

The fact that Hall pleaded guilty to rape under a plea agreement which limited his punishment to ten to twenty years to avoid possible imposition of the maximum punishment of life imprisonment does not affect the legal voluntariness of his plea. *Brady v. United States,* 397 U.S. 742, 751, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Finally, we see no denial of due process of law or

---

**2.** The West Virginia Juvenile Proceedings Article was entirely revised in 1977. Former § 49–5–3 was deleted.

**3.** Although West Virginia has abolished punishment by death, the forcible rape statute in effect at the time, W.Va.Code § 61–2–15, provided for punishment by life imprisonment, and a crime punishable by life imprisonment is treated as a capital offense. *See Lycans v. Bordenkircher,* 222 S.E.2d 14, 17 (W.Va. 1975). A revised statute, enacted in 1976, now fixes the punishment as imprisonment for not less than ten years nor more than twenty. W.Va. Code § 61–8B–3 (1977).

of equal protection of the laws in West Virginia's prescribing a more severe penalty for forcible rape of a female than for carnal knowledge of a male. *Hall v. McKenzie*, 537 F.2d 1232 (4 Cir. 1976).

*AFFIRMED.*