**James Samuel SIMS, Petitioner-Appellant,**

v.

**Ted ENGLE, Superintendent, Respondent-Appellee.**

No. 79–3264.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 17, 1979.

Decided April 17, 1980.

Rehearing Denied June 26, 1980.

Michael C. Hennenberg, Fink & Greene Co., L. P. A., Cleveland, Ohio (Court-Appointed), for petitioner-appellant.

James Samuel Sims, pro se.

William J. Brown, Atty. Gen., Randall G. Burnworth, Columbus, Ohio, for respondent-appellee.

Before ENGEL, BOYCE F. MARTIN, Jr., and JONES, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

This case is an appeal from a denial of a writ of habeas corpus. We reverse the order of the district court and remand for issuance of the writ.

On February 27, 1962, the Juvenile Division of the Cuyahoga County Court of Common Pleas in the State of Ohio (Juvenile Court) issued a citation and warrant against appellant. The citation and warrant alleged that appellant had participated in several armed robberies. Appellant, who was seventeen years old at that time, was taken into custody and brought before the Juvenile Court on March 27, 1962 for a hearing. No transcript or record of the hearing was made. The Juvenile Court determined in accordance with the existing provisions of Section 2151.26 of the Ohio Revised Code [1] to bind the appellant over to the Cuyahoga County Court of Common Pleas Criminal Division for trial as an adult. The Juvenile Court entered its decision on the docket as a journal entry, which read:

TO COURT: This twenty-seventh day of March, 1962, James Samuel Sims, a minor

1. A delinquent was defined, in pertinent part, as "any child who violates any law of this state . . . ." Rev.Code Section 2151.02(A) (1957).

of about the age of seventeen years, came before the Honorable Albert A. Woldman upon the petition of Charles R. Reynolds alleging that James Samuel Sims is a delinquent child in this: that on or about February 16, 1962, at 4502 St. Clair Avenue, Cleveland, Ohio, he did unlawfully, and by putting in fear while armed with a dangerous weapon to wit, a pistol, rob from the person of one, Dorothy Kulas, cash in the approximate amount of $1069.00, contrary to the statute in such case made and provided for and against the peace and dignity of the State of Ohio. That on or about February 18, 1962, at 3005 Woodhill Road, Cleveland, Ohio, he did unlawfully, purposely and while in the perpetration of a robbery, kill one, William C. Beasley, contrary to the form of the statute in such case made and provided for and against the peace and dignity of the State of Ohio. That on or about February 23, 1962, at 6938 Kinsman Road, Cleveland, Ohio, he did unlawfully, and by putting in fear while armed with a dangerous weapon, to wit, a pistol, rob from the person of one, David Warren, cash in the approximate amount of $104.50, contrary to the form of the statute in such case made and provided for and against the peace and dignity of the State of Ohio. It appearing to the Court that said child has committed acts which, if committed by an adult, would be felonies, a mental and physical examination having been made by duly qualified persons as provided by statute, it is hereby ordered that pursuant to Section 2151.26 Ohio Revised Code the said James Samuel Sims be bound over to the Court of Common Pleas of Cuyahoga County for further proceedings according to law. It is ordered that said James Samuel Sims be, and he hereby is, committed to the Jail of Cuyahoga County.

Following the bindover, the Cuyahoga County Grand Jury indicted appellant on two counts of first degree murder. Appellant pled not guilty to these charges, but later withdrew this plea and entered a plea of guilty to homicide generally, which was accepted, and waived a trial by jury. According to then current Ohio law, appellant was tried before a three judge court solely on the issue of the degree of culpability. Ohio Rev.Code Section 2945.06. Appellant was found guilty of first degree murder on both counts of the indictment and was sentenced to two consecutive terms of life imprisonment. The court rejected appellant's motions for reconsideration of the sentence and to vacate and set aside the judgment.

On May 17, 1976, appellant filed a very belated *pro se* motion for leave to appeal and a motion to proceed *in forma pauperis* with the Ohio Eighth District Court of Appeals. The Court of Appeals granted both motions on June 9, 1976 and appointed counsel for appellant. In appealing his 1962 conviction, appellant assigned two errors. First, appellant alleged that the trial and conviction before the Court of Common Pleas Criminal Division subsequent to the hearing and order of the Juvenile Court put him in double jeopardy in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Second, appellant asserted that the trial court had failed to determine whether appellant had knowingly, intelligently and voluntarily entered his guilty plea. The Court of Appeals found no error and affirmed appellant's conviction and sentence. *State v. Sims*, 55 Ohio App.2d 285, 380 N.E.2d 1350, 9 Ohio Op.3d 417 (Ct.App.1977). Upon further appeal, the Supreme Court of Ohio dismissed the appeal on April 7, 1978 for failure to state a substantial constitutional question. *State v. Sims*, Case No. 78–140 (Supreme Court of Ohio, 1978).

Winning no relief in the state courts, appellant petitioned for a writ of habeas corpus in the Northern District of Ohio on the same two grounds asserted in state court. The district court found no merit in either argument advanced by appellant and denied the writ. Appellant then filed a timely appeal with this court. Because we have determined that appellant was subjected to double jeopardy in the state court proceedings and is therefore entitled to the writ of habeas corpus, we do not address the issue of the voluntariness of the guilty plea.

While juvenile court practices may now be scrutinized for compliance with constitutional standards, it was not always so. *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), provides insight into the basis of the Supreme Court's discomfort with the prior lack of scrutiny. The Court posed the problem in these words:

> While there can be no doubt of the original laudable purpose of juvenile courts, studies and critiques in recent years raise serious questions as to whether actual performance measures well enough against theoretical purpose to make tolerable the immunity of the process from the reach of constitutional guarantees applicable to adults.

383 U.S. at 555–56, 86 S.Ct. at 1054.

The Supreme Court resisted the temptation to pass on the precise question at that time. Yet in the following year, it squarely confronted and decided the issue in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

In holding in *In re Gault* that constitutional guarantees must be accorded to juveniles, the Supreme Court declared: ". . . neither the Fourteenth Amendment nor the Bill of Rights is for adults alone," 387 U.S. at 538, 87 S.Ct. at 1436, and, ". . . it would be extraordinary if our Constitution did not require the procedural regularity and exercise of care implied in the phrase 'due process' . . ." 387 U.S. at 546, 87 S.Ct. at 1444.

These holdings in *Kent* and *Gault*, along with *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), decided several years later, provide the sturdy decisional underpinning for *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), and our holding in this case.

The double jeopardy clause of the Fifth Amendment applies to state court proceedings through the force of the due process clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The double jeopardy clause has been held specifically applicable to state juvenile court proceedings. *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), and applies retroactively to proceedings conducted before 1975. *Holt v. Black*, 550 F.2d 1061 (6th Cir. 1977). The constitutional principles governing this case and the facts of the case are undisputed. At issue is the application of the constitutional principles to the set of facts presented. Because a question of law is presented, our scope of review is free from the clearly erroneous standard.

The crux of this case is whether appellant was placed in jeopardy at the March 27, 1962 hearing in the Juvenile Court. It is firmly established that jeopardy attaches "when the Juvenile Court, as the trier of the facts, began to hear evidence." *Breed v. Jones*, 421 U.S. at 531, 95 S.Ct. at 1787.[2] We now determine that the Juvenile Court was acting as the trier of facts at the March 27, 1962 hearing. *Breed v. Jones* is indistinguishable in all significant respects from the facts in the case at bar and compels our conclusion that appellant's constitutional right against double jeopardy was violated.

In *Breed v. Jones*, a petition was filed in the Superior Court of California, alleging that Jones, a seventeen year old male, was a delinquent under the provisions of Cal. Welf. & Inst'ns Code Section 602 (1966), in that he had committed acts, which if committed by an adult, would constitute the crime of armed robbery. After a detention hearing, at which the probation officer was required to present only a prima facie case that Jones had committed the alleged offense, Jones was ordered detained pending a hearing on the petition. Several weeks later the Juvenile Court conducted the ad-

---

2. The Supreme Court also stated:

   We believe it is simply too late in the day to conclude, as did the District Court in this case, that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years. 421 U.S. at 529, 95 S.Ct. at 1785.

judicatory hearing pursuant to Cal.Welf. & Inst'ns Code Section 701 (1966).[3] The Juvenile Court in the Section 701 hearing addressed only the question of whether Jones was a delinquent within the meaning of Section 602. The Juvenile Court heard testimony and found that the allegations in the petition were true and that Jones was a delinquent as defined by Section 602. The Juvenile Court then ordered Jones detained until the dispositional hearing required by Cal.Welf. & Inst'ns Code Section 702 (Supp. 1968). At the dispositional hearing, the Juvenile Court found Jones unfit for rehabilitation through the facilities of the Juvenile Court and ordered Jones prosecuted as an adult. Cal.Welf. & Inst'ns Code Section 707 (Supp.1967).[4]

Determining that jeopardy had attached at the point in time of the Section 701 hearing, at which the Juvenile Court made a finding that Jones had committed the alleged offenses, the United States Supreme Court held that the subsequent prosecution of Jones as an adult violated the double jeopardy clause. 421 U.S. at 531, 95 S.Ct. at 1786.

The Ohio Juvenile Code in 1962[5] was strikingly similar to the California juvenile law under examination in *Breed v. Jones*, though the procedure in Ohio juvenile courts was marked by greater informality. The Juvenile Court, possessing exclusive jurisdiction in any matter "concerning any child who . . . is [a] . . . delin-

**3.** At the time of the hearing, Cal.Welf. & Inst'ns Code § 701 (1966) provided:

At the hearing, the court shall first consider only the question whether the minor is a person described by Sections 600, 601, or 602, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; however, a preponderance of evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602, and a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Sections 600 or 601. When it appears that the minor has made an extrajudicial admission or confession and denies the same at the hearing, the court may continue the hearing for not to exceed seven days to enable the probation officer to subpoena witnesses to attend the hearing to prove the allegations of the petition. If the minor is not represented by counsel at the hearing, it shall be deemed that objections that could have been made to the evidence were made.

**4.** At the time, Cal.Welf. & Inst'ns Code § 707 (Supp.1967) provided:

At any time during a hearing upon a petition alleging that a minor is, by reason of violation of any criminal statute or ordinance, a person described in Section 602, when substantial evidence has been adduced to support a finding that the minor was 16 years of age or older at the time of the alleged commission of such offense and that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court, or

if, at any time after such hearing, a minor who was 16 years of age or older at the time of the commission of an offense and who was committed therefor by the court to the Youth Authority, is returned to the court by the Youth Authority pursuant to Section 780 or 1737.1, the court may make a finding noted in the minutes of the court that the minor is not a fit and proper subject to be dealt with under this chapter, and the court shall direct the district attorney or other appropriate prosecuting officer to prosecute the person under the applicable criminal statute or ordinance and thereafter dismiss the petition or, if a prosecution has been commenced in another court but has been suspended while juvenile court proceedings are held, shall dismiss the petition and issue its order directing that the other court proceedings resume.

In determining whether the minor is a fit and proper subject to be dealt with under this chapter, the offense, in itself, shall not be sufficient to support a finding that such minor is not a fit and proper subject to be dealt with under the provisions of the Juvenile Court Law.

A denial by the person on whose behalf the petitioner is brought of any or all of the facts or conclusions set forth therein or of any inference to be drawn therefrom is not, of itself, sufficient to support a finding that such person is not a fit and proper subject to be dealt with under the provisions of the Juvenile Court Law.

The court shall cause the probation officer to investigate and submit a report on the behavioral patterns of the person being considered for unfitness.

**5.** All citations to the Ohio Revised Code indicate the statute as it read in 1962.

quent . . ." (Ohio Rev.Code Section 2151.23), would issue a citation (Ohio Rev. Code Section 2151.28) or a warrant (Ohio Rev.Code Section 2151.30) to assume custody over a child. The Juvenile Court could then order the child released in the custody of parents or other responsible persons or detained in a detention center, as was appellant. Ohio Rev.Code Section 2151.31. The Juvenile Court next conducted a hearing in an informal manner (Ohio Rev.Code Section 2151.35),[6] at which the child could

**6. Informal hearing; right of child to counsel; disposition; school district to bear cost.**

Sec. 2151.35. The juvenile court may conduct its hearings in an informal manner, and may adjourn such hearings from time to time. In the hearing of any case the general public may be excluded and only such persons admitted as have a direct interest in the case. The juvenile court shall permit a child to be represented by an attorney-at-law during any hearing before such court and shall extend to such child all the rights and privileges of section 2935.17 of the Revised Code. Such attorney-at-law, the parents or guardian of such child and any attorney-at-law representing them shall be entitled to visit such child at any reasonable time and to be present at any hearing involving the child and shall be given reasonable notice of such hearing.

Any report or part thereof concerning such child which has been prepared by an employee of the court which is used in the hearing and is pertinent thereto shall for good cause shown be made available to any attorney-at-law representing such child and to any attorney-at-law representing the parents or guardian of such child, upon written request prior to any hearing involving such child. All cases involving children shall be heard separately and apart from the trial of cases against adults. The court may excuse the attendance of the child at the hearing in cases involving neglected, dependent, or crippled children. The court shall hear and determine all cases of children without a jury. If the court finds that the child is a juvenile traffic offender or is delinquent, neglected, or dependent, it may by order entered proceed as follows:

(A) Place the child on probation, under supervision in its own home, in the custody of a relative, in an institution, or in a certified foster home, wherever situate, upon such terms as the court shall determine; provided that the court may place delinquent children on a free or wage basis in uncertified foster homes. The court shall, at the time of placing the child, determine which school district must bear the cost of educating the child while he is residing at such place as the court directs. The decision of the court concerning the expense of the child's education shall be made a part of the order provided by this section;

(B) Commit the child temporarily or permanently to the division of social administration of the department of public welfare, or to a county department of welfare which has assumed the administration of child welfare, county child welfare board, or certified organization, or to any institution, or to any agency in Ohio or in another state authorized and qualified to provide or secure the care, treatment, or placement required in the particular case;

(C) Impose a fine upon a juvenile traffic offender or a delinquent child not exceeding * * * fifty dollars * * * and costs * * *;

(D) Make such further disposition as the court deems * * * proper;

(E) Commit a male child over sixteen years of age who has committed an act which if committed by an adult would be a felony to the Ohio state reformatory;

(F) Suspend or revoke the operator's or chauffeur's license issued to any minor found to be a juvenile traffic offender;

(G) Suspend or revoke the registration of all motor vehicles registered in the name of any minor found to be a juvenile traffic offender.

Whenever a child commits an act of delinquency before arriving at the age of eighteen years, and the specific complaint thereon is not filed or hearing held until after said child arrives at the age of eighteen years, the court shall have jurisdiction to hear and dispose of such complaint, as if the complaint were filed and hearing held before such child arrived at the age of eighteen years, provided that no child over eighteen years of age at the time of the court hearing may be committed to the boys' or girls' industrial schools.

The judgment rendered by the court under this section shall not impose any of the civil disabilities ordinarily imposed by conviction, in that the child is not a criminal by reason of such adjudication, nor shall any child be charged or convicted of a crime in any court, except as provided in section 2151.26 of the Revised Code. The disposition of a child under the judgment rendered or any evidence given in the court shall not be admissible as evidence against the child in any other case or proceeding in any other court, except that the judgment rendered and the disposition of such child may be considered by any court only as to the matter of sentence or to the granting of probation. Such disposition or evidence shall not operate to disqualify a child in any future civil service examination, appointment, or application.

be represented by counsel and could present evidence in his behalf. The rules of civil procedure and evidence were ordinarily followed. *State v. Shardell*, 107 Ohio App. 338, 153 N.E.2d 510 (1958). To maintain its jurisdiction and to enter a dispositional order, the Juvenile Court was required to make a finding of delinquency,[7] supported by the preponderance of the evidence.[8] *Id.* At the hearing the Juvenile Court judge had full authority to commit the child to the Ohio State Reformatory or Boys Industrial School, to place the child with a suitable family, to put the child on probation, or to transfer the child to the Court of Common Pleas Criminal Division for prosecution as an adult. Ohio Rev.Code Section 2151.35. The Juvenile Court possessed full and exclusive jurisdiction and power over the child until the entry of a transfer or bindover order. Ohio Rev.Code Sections 2151.53, 2151.26, 2151.38. Before entering an order to transfer, the Juvenile Court was required by statute to make a finding of delinquency, that is, that the child had committed the alleged offenses, based on a full investigation of the facts. Ohio Rev.Code Section 2151.26;[9] *In re Jackson*, 21 Ohio St.2d 215, 257 N.E.2d 74 (1970).

In the case at bar, appellant was brought before the Juvenile Court for a hearing. The Juvenile Court judge at the conclusion of the hearing bound appellant over to the Court of Common Pleas Criminal Division for prosecution as an adult. Appellant was prosecuted as an adult for the same acts which were the basis of the delinquency hearing. Because the Ohio statute required a full investigation of the facts underlying the charge of delinquency and a finding of delinquency that appellant had committed acts in violation of state law, the Juvenile Court possessed the power of, and acted as, a trier of fact as defined in *Breed v. Jones*. Therefore, jeopardy attached at the March 27, 1962 hearing and the subsequent criminal prosecution for the same acts contravened appellant's constitutional protection against double jeopardy.

■ The district court reached its erroneous conclusion by focusing on the end product of the Juvenile Court proceeding, the journal entry, rather than the statutory powers of the Juvenile Court at the March 27, 1962 hearing. The district court found the journal entry inconclusive and determined that the journal entry gave no indication of an adjudicatory hearing or finding

---

Whenever * * * a court commits a child to the division of social administration, the department of public welfare, or to any department, board, institution, or agency it shall transmit with the order of commitment an adequate case history of the child and its family.

With respect to a crippled or otherwise physically handicapped child, who is neither delinquent, neglected, nor dependent, the court may commit the child temporarily to the division or to any agency in Ohio authorized and qualified to provide or secure the care, treatment, or placement required in the particular case.

7. A delinquent was defined, in pertinent part, as "any child who violates any law of this state . . ." Revised Code Section 2151.02(A) (1957).

8. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), requiring the juvenile courts to use the beyond a reasonable doubt standard, had not yet been decided at the time of appellant's hearing before the juvenile court. Much of the Ohio juvenile code was rewritten subsequent to the Supreme Court decision applying due process principles to juvenile court

proceedings. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

9. Child charged with felony.
In any case involving a delinquent child under sections 2151.01 to 2151.54, inclusive, of the Revised Code, who has committed an act which could be a felony if committed by an adult, the juvenile judge, after full investigation and after a mental and physical examination of such child has been made by the bureau of juvenile research, or by some other public or private agency, or by a person qualified to make such examination, may order that such child enter into a recognizance with good and sufficient surety, subject to the approval of the judge, for his appearance before the court of common pleas at the next term thereof, for such disposition as the court of common pleas is authorized to make for a like act committed by an adult, or the judge may exercise the other powers conferred in such sections in disposing of such case.

of delinquency. Citing to dicta in *Brenson v. Havener*, 403 F.Supp. 221 (N.D.Ohio 1975), the district court stated that some juvenile judges did not follow the required statutory practice of determining delinquency before a bindover order and then held that it would not assume the juvenile judge in this case followed the statutory procedure.[10]

▮ The district court's reasoning overlooks the essential factors that the juvenile judge was empowered to impose sanctions at the March 27, 1962 hearing, that evidence was taken,[11] and that the liberty and reputation of the appellant were put in risk at that time. *Breed v. Jones*, 421 U.S. at 531–32, 95 S.Ct. at 1786–87. *See also Swisher v. Brady*, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978). The rendering of a final judgment is immaterial to the applicability of the double jeopardy clause. *Swisher v. Brady*, 438 U.S. at 214–15, 98 S.Ct. at 2706. Accordingly, the much disputed meaning of the Juvenile Court's journal entry is irrelevant and unnecessary to the disposition of this case.[12] What actually occurred at the March 27, 1962 hearing is also insignificant. Once the Juvenile Court, possessing the jurisdiction and power to enter final orders levying a wide range of possible sanctions, began a hearing, not limited in scope by statute to a preliminary or probable cause hearing, jeopardy attached and appellant possessed the constitutional right to have the Juvenile Court, as the original trier of fact, determine his fate. *Swisher v. Brady*, 438 U.S. at 214–15, 98

S.Ct. at 2706; *Breed v. Jones*, 421 U.S. at 528–31, 95 S.Ct. at 1785–86. *Accord State v. Eppinger*, Case No. 35489 (Ct.App., July 14, 1977). *Compare Hall v. McKenzie*, 575 F.2d 481 (4th Cir. 1978), and *McGaha v. Tennessee*, 461 F.Supp. 360 (E.D.Tenn.1978) (jurisdiction of juvenile court strictly limited by statute so jeopardy did not attach.)

Invocation in this situation of the double jeopardy clause fosters several of its salutary constitutional purposes. First, the juvenile would be saved the embarrassment, expense and ordeal resulting from two trials. Second, the prosecution would be prevented from refining its case in Juvenile Court for presentation in the Court of Common Pleas Criminal Division, a practice which would enhance the risk of an innocent defendant being found guilty. Finally, the prosecutor would not be allowed to shop for sentences by bringing successive prosecutions for the same offense before different courts.

IT IS THEREFORE ORDERED that the order of the district court is reversed and that the case is remanded to the district court for issuance of the writ of habeas corpus.

### ORDER

Respondent-appellee Ted Engle has filed a petition for rehearing, arguing that the opinion of this Court would require the release of every juvenile who was bound over according to the procedures of former Ohio Rev.Code § 2151.26. Respondent's argument overstates the holding of the

---

10. The district court took no evidence on the existence of a customary practice in the Cuyahoga County Juvenile Court divergent from the statutory requirements. The statutory provisions are straightforward and the requirement made clear by the *Jackson* decision was known before 1962. *State v. Worden*, 162 Ohio St. 593, 124 N.E.2d 817 (1955) (dissenting opinion, dissenting on other grounds). Furthermore, state court proceedings are presumed to be regular and valid, *State v. Ray*, 102 Ohio App. 395, 397, 143 N.E.2d 484 (Ct.App.1956), and orders of the state courts are to be so interpreted if it is reasonable to do so. *State v. Carter*, 27 Ohio St.2d 135, 272 N.E.2d 119 (1971) (per curiam).

11. That evidence was heard is indicated by the journal entry's phrase: "it appearing to the Court."

12. Our holding makes it unnecessary to determine whether the Juvenile Court actually made a finding of fact that Sims had committed the criminal acts charged. Were we compelled to interpret the Juvenile Court's journal entry order, in particular the phrase "It appearing to the Court that said child has committed acts," we would hold that the Juvenile Court did make a finding of fact of Sims' guilt. Though we would be very reluctant to overturn the interpretations of the journal entry made by the Ohio Court of Appeals and federal district court, we are not bound by their conclusions of ultimate fact where the basic evidentiary facts are undisputed. *Industrial Equip. Co. v. Emerson Elec. Co.*, 554 F.2d 276, 284 (6th Cir. 1977).

opinion. Our opinion does not decide that there is a violation of double jeopardy, if the record of the juvenile court hearing plainly establishes that the hearing was limited to a determination of probable cause, after which the juvenile was ordered to stand trial as an adult in the Court of Common Pleas.